# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3980

_____

| | | |
|---|---|---|
| Eric C. Rajala, Trustee in Bankruptcy for the Estate of the H.A. Sale Corporation, Inc., f/k/a U.S.C. Industries, Inc. | * * * * * * | |
| Appellant, | * * | |
| vs. | * * | Appeal from the United States District Court |
| Donnelly Meiners Jordan Kline, P.C., | * * | for the Western District of Missouri. |
| Appellee. | * * * | |

_____

Submitted: September 14, 1999
Filed: October 6, 1999

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,[1] District Judge.

_____

_____

[1] The Honorable Andrew W. Bogue, United States Senior District Judge for the District of South Dakota, sitting by designation.

BOGUE, District Judge.

This case stems from a corporate acquisition that ultimately resulted in the bankruptcy of the acquiring firm. Appellant is the Trustee in Bankruptcy for the estate of U.S.C. Industries, Inc. (hereinafter U.S.C.I.). The Trustee filed this action against Appellee Donnelly Meiners Jordan Kline, P.C. (hereinafter Donnelly), an accounting firm which was allegedly negligent in its evaluation of the two companies purchased by U.S.C.I. The district court[2] granted summary judgment in favor of Donnelly, reasoning that the Kansas statute of limitations, applicable under Missouri's borrowing statute, barred the action. The Trustee appeals. We conduct our review of the district court's decision de novo, reciting all the facts and reasonable inferences therefrom in a light most favorable to the Trustee as the non-movant. Carter v. St. Louis University, 167 F.3d 389, 400 (8th Cir. 1999).

## I. BACKGROUND

U.S.C.I. operated a plastic injection mold manufacturing business and marketed plastic houseware and drinking products. The company was incorporated and had its plant in Kansas. In the summer of 1990, the President of two Kansas corporations, ABC and HPI, advised U.S.C.I. that his companies were looking for a buyer. ABC and HPI were also involved in marketing plastic products. U.S.C.I. retained Donald Chapman, an employee of Donnelly, to investigate certain financial and operational aspects of the two companies. Donnelly had been U.S.C.I.'s accounting firm for some time. No written engagement letter between Donnelly and U.S.C.I. regarding the

---

[2] The Honorable Fernando J. Gaitan, United States District Judge for the Western District of Missouri.

ABC/HPI investigation ever issued; Donnelly simply agreed to perform the work during a telephone conversation.

Chapman proceeded to investigate ABC and HPI so that U.S.C.I. could make an informed decision as to whether or not to purchase the companies. Soon thereafter, U.S.C.I. responded to suggestions from Chapman's father (an attorney who advised U.S.C.I. regarding the acquisition), and invited Chapman to leave Donnelly. Chapman agreed. He was hired by U.S.C.I. on January 2, 1991 as its Chief Financial Officer, after which U.S.C.I. discontinued its relationship with Donnely, relying on Chapman for its accounting needs. On January 18 of 1991, after negotiations which took place in Kansas, U.S.C.I. closed the deal and purchased ABC and HPI's stock for $1.8 million. The closing occurred in Missouri.

Soon thereafter, U.S.C.I. began to discover a number of problems. ABC and HPI had represented that their inventories were "fresh," but in fact they were "stale." It had been expected that ABC and HPI would realize a 10% sales increase in 1991, instead it quickly became apparent that sales were falling. In addition to misstated sales projections, there were inventory discrepancies. U.S.C.I. understood that accounts receivable from certain customers were collectible, but it soon discovered that the products had never been shipped. U.S.C.I. had been led to believe that the market for ABC and HPI products was growing. In fact, the market had already matured. U.S.C.I. also learned that tooling had not been started for a new drink container when it had been told that production well underway. These problems, and others, caused U.S.C.I. significant cash flow troubles. U.S.C.I. retained the accounting firm of Ernst & Young in October of 1992 to examine some of these problems and irregularities in ABC's records. In December 1992, at a meeting in Missouri, Ernst & Young explained these accounting discrepancies to U.S.C.I. in more detail.

On January 15, 1993, in Kansas state court, U.S.C.I. sued the sellers of ABC and HPI for misrepresentation and breach of contract. U.S.C.I. did not join a cause of

action against Donnelly based on its counsel's representation that it would not sue Donnely as a matter of "policy." Ultimately, although it obtained a small settlement, U.S.C.I. failed to recoup the $1.8 million purchase price and the $1 million in capital it had infused into ABC and HPI in an attempt to make them profitable. Its financial resources exhausted, it was forced into Chapter 7 bankruptcy on April 29, 1994. Exactly two years later, the Trustee brought claims against Donnelly for, *inter alia*, negligence, breach of fiduciary duty, and breach of contract.

## II. DISCUSSION

### A. Where did the action originate?

Missouri law provides: "Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts in this state." Mo. Rev. Stat. § 516.190. This "borrowing statute operates to adopt the foreign state's statute, thereby barring the action in Missouri as well." Nettles v. AT&T Co., 55 F.3d 1358, 1362 (8th Cir. 1995). The operative term in the borrowing statute is where the action "originates." A cause of action originates under Missouri law "at the place where plaintiff's alleged damages stemming from the pleaded cause of action are sustained and capable of ascertainment." In re Master Mortgage Investment Fund, Inc., 151 B.R. 513, 516 (W.D.B.R. 1993) (citations omitted). "[D]amages are 'sustained and capable of ascertainment' when the fact of damage can be discovered or made known." Jordan v. Willens, 937 S.W.2d 291, 294 (Mo. App. 1996).

U.S.C.I., a Kansas company, acquired two other Kansas companies after negotiations conducted in Kansas culminated in a contract which required the application of Kansas law. U.S.C.I. operated the companies in Kansas and itself felt the injuries allegedly caused by Donnelly's alleged negligence in Kansas. The Trustee argues that the action originated in Missouri because it was in Missouri where Ernst &

4

Young appraised U.S.C.I. in some detail as to the extent and specifics of the alleged wrongs. The district court saw through this argument as an attempt to forum shop for a more generous statute of limitations, the very evil to which the Missouri borrowing statute is directed. See Patch v. Playboy Enterprises, Inc., 652 F.2d 754, 756 (8th Cir. 1981) (per curiam); Finnegan v. Squire Publishers, Inc., 765 S.W.2d 703, 704 (Mo. App. 1989).

U.S.C.I. felt the cash flow crunch allegedly caused by Donnelly's acts and omissions and realized – or reasonably should have realized – that the damages' causes could be traced to wrongs committed by the sellers, as well as by U.S.C.I.'s advising accountant. It sustained, ascertained and realized its damages in Kansas. The Trustee's claim against Donnelly therefore originated in Kansas, and Kansas' statutes of limitations apply via Missouri's borrowing statute.

## B. When did the claims accrue?

Having determined that the district court correctly concluded that the Missouri borrowing statute operated to borrow the Kansas statutes of limitations, we must next examine whether Kansas law fully bars the action. Preliminarily, it should be noted that the Trustee's action was commenced for statute of limitations purposes on April 29, 1994, the date on which U.S.C.I. filed bankruptcy, despite the fact that the Trustee's complaint was not filed until two years later. 11 U.S.C. § 108(a). We turn, then, to Kansas statutes of limitations, the operation of which are generally governed by "the rule of accrual." Steve R. Fabert, Statutes of Limitation, Statutes of Repose and Continuing Duties Under the Kansas Product Liability Act, 36 Washburn L.J. 367, 374 (1997). The Trustee's complaint sounds in contract and in tort; both require separate consideration.[3]

_____

[3] Kansas courts undertake a careful determination of whether a given cause of action is one in tort or contract for statute of limitation purposes. See Pittman v.

5

Kansas law provides a three year statute of limitations for the breach of an oral contract, Kan. Stat. Ann. § 60-512(1),[4] and a two year statute of limitations for tort claims, Kan. Stat. Ann. § 60-513(a)(4). The triggering date for the breach of oral contract statute of limitations is the date of the alleged breach. Augusta Bank & Trust v. Broomfield, 643 P.2d 100, 105 (Kan. 1982); see also Matter of Estate of Moe, 729 P.2d 447, 449 (Kan. 1986), quoting 18 Williston on Contracts § 2027B (3rd ed. 1978) (observing that generally a contract statute of limitations "begins to run as soon as there is a cause of action."). The Trustee's contract claim accrued no later than the date on which U.S.C.I. purchased the two companies, relying on Donnelly's allegedly deficient performance. After that date, Donnelly could no longer render pre-acquisition advice, so its breach, if any, must have occurred no later than the closing date. Because the Trustee did not commence his action against Donnelly within three years of the January 1991 closing, its breach of contract claim is time barred.[5]

The Trustee's tort claims must have been brought within two years of the date on which "the fact of injury becomes reasonably ascertainable to the injured party. . . ." Kan. Stat. Ann. § 60-513(b); Boyle v. Harries, 923 P.2d 504, 510 (Kan. App. 1996). Determining the accrual date for tort claims is therefore a less precise task. The Kansas statutory clock starts ticking when a negligent act causes substantial injury, Resolution Trust Corp. v. Scaletty, 891 P.2d 1110, 1115 (Kan. 1995), or at the point

---

McDowell, Rice & Smith, Chartered, 752 P.2d 711 (Kan. 1988). We omit this part of the analysis because we find that the Trustee's claims are barred regardless of their categorization.

[4] "All actions upon contracts, obligations or liabilities expressed or implied but not in writing" must be "brought within three (3) years . . ." Kan. Stat. Ann. § 60-512(1).

[5] On appeal, the Trustee advances a tolling argument based on the doctrine of equitable estoppel. This argument was not articulated to the district court and we decline to consider it. See Steahr v. Apfel, 151 F.3d 1124, 1126 (8th Cir. 1998).

when the plaintiff either knew or reasonably should have known that the defendant's negligence caused its injury, <u>Dearborn Animal Clinic, P.A. v. Wilson</u>, 806 P.2d 997, 1006 (Kan. 1991). In this case, it is undisputed that U.S.C.I. had knowledge of the cash flow shortfalls, stale inventory, uncollectible receivables, and other problems no later than ninety days after its acquisition of ABC and HPI, that is, in April 1991. Since U.S.C.I. was furnished sufficient evidence "that would have led a reasonable person to discover" its injury and to ascertain the injury's alleged cause more than two years prior to its filing for bankruptcy in 1994, Donnelly's statute of limitations defense is valid. <u>Calver v. Hinson</u>, 1999 WL 460944, *4, 982 P.2d 970, — (Kan. 1999).

The Trustee puts forth the argument, which the district court rejected, that Kansas courts would apply the layman-expert rule to toll the statute. Under this rule, Missouri courts have tolled the statute of limitations when plaintiffs employ an expert who is "capable of ascertaining plaintiffs' injuries, but the plaintiffs were not capable of doing it themselves." <u>Anderson v. Griffin, Dysart, Taylor, Penner & Lay, P.C.</u>, 684 S.W.2d 858, 8- (Mo. App. 1984); <u>see also</u> <u>Krug v. Sterling Drug, Inc.</u>, 416 S.W.2d 143 (Mo. 1967). Kansas courts frown on permitting exceptions to their statutes of limitations in addition to those specifically enumerated. <u>See</u> <u>Christensen Grain Inc. v. Garden City Coop, Equity Exch.</u>, 391 P.2d 81, 83-84 (Kan. 1964). Yet even assuming that Kansas courts would adopt this exception, it cannot apply here. U.S.C.I. was aware of allegedly injurious inconsistencies between what Donnelly had indicated about the financial health of the acquired companies and the actual state of those companies no later than ninety days after closing. This undisputed fact removes the Trustee's allegations from the reach of the layman-expert exception. Thus, as the district court correctly found, U.S.C.I.'s tort claims are also time barred.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment. The district court was correct in concluding that the Missouri borrowing

statute applied and looked to Kansas law for its statutes of limitations rules. Under Kansas statutes of limitations for contract and tort claims, the Trustee's claims are fully time barred. Therefore, the district court was correct in all respects when it granted judgment to the defendant as a matter of law.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.