# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2854

_____

| | | |
|---|---|---|
| Alicia Wai Ling Tang, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order of the |
| | * | Immigration & Naturalization Service |
| Immigration and Naturalization | * | |
| Service, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted:  April 12, 2000

Filed:  September 5, 2000

_____

Before McMILLIAN, FAGG and LOKEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Petitioner, Alicia Wai Ling Tang ("Petitioner") seeks judicial review of a final decision of the Board of Immigration Appeals ("BIA") dismissing her appeal from a deportation order entered by an immigration judge ("IJ"). In re Tang, A27 087 058, A27 086 975, and A27 089 076 - Omaha (BIA  June 5, 1997) (order dismissing appeal).[1]  The IJ found Petitioner deportable, denied her application for suspension of

_____

[1]Petitioner has a husband and two daughters who were  issued Orders to Show Cause at the same time as Petitioner.  Her daughters' cases were consolidated with that

deportation, and granted her voluntary departure. Petitioner argues that the BIA erroneously concluded that she did not acquire seven years continuous physical presence in the United States prior to service of an order to show cause ("OSC") issued by the Immigration and Naturalization Service ("INS") and that the "stop-time" amendments to the Immigration and Naturalization Act ("INA") applied to Petitioner. For the reasons discussed below, we grant the petition for review, vacate the order of the BIA, and remand for further proceedings consistent with this opinion.[2]

The BIA had jurisdiction pursuant to 8 C.F.R. § 3.1(b)(2) and § 240.53 (1998). Jurisdiction in this court is proper based upon 8 U.S.C. § 1105a(a)(1), as modified by § 309(c) of the IIRIRA. The notice of appeal was timely filed pursuant to IIRIRA § 309(c)(4)(C), 110 Stat. at 3009-626 (1996). See Mayard v. INS, 129 F. 3d 438 (8th Cir. 1997).

---

of Petitioner before the immigration judge but are not the subject of this appeal. Counsel stated, in supplemental facts and at oral argument, that the case of Petitioner's husband was severed from that of Petitioner, his application for suspension of deportation was granted, and he has permanent resident status, that one daughter no longer lives in this country, and that the other daughter is a permanent resident and will be eligible to apply for United States citizenship on September 4, 2001.

[2]Petitioner also alleges that the retroactive application of § 203(a)(1)(a) of the Nicaraguan Adjustment and Central American Relief Act violates her due process and equal protection rights under the Fifth Amendment to the Constitution of the United States. The Eighth Circuit rejected these arguments in Afolayan v. INS, __ F.3d __, 2000 WL 1010775 at *4 (8th Cir. July 24, 2000). See also Tefel v. Reno, 180 F.3d 1286, 1299-1300 (11th Cir. 1999), cert. denied, 120 S.Ct. 2657 (2000).

# I. BACKGROUND

Legislative Background

Prior to its repeal date, INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994), allowed the Attorney General to suspend deportation for an alien facing deportation and to adjust his or her status to that of an alien lawfully admitted for permanent residence. In order to be eligible for "suspension of deportation," an alien was required to establish that:

> [he or she] is deportable under any law of the United States ...; has been physically present in the United states for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he [or she] was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his [or her] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence . . . .

Id. Under this INA provision, the time an alien spent in deportation proceedings prior to applying for suspension of deportation counted toward the seven years' physical residence requirement. See Tefel v. Reno, 180 F.3d 1286, 1289 (11th Cir. 1999) (Tefel), cert. denied, 120 S.Ct. 2657 (2000).

On September 30, 1996, Congress passed the the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), amended by Pub. L. 104-302 § 2(2), 110 Stat. 3657 (Oct. 11, 1996). Among its revisions to the INA, IIRIRA § 304(a), enacting INA § 240A(d), 8 U.S.C. § 1229b (Supp. III 1997), replaced "suspension of deportation" under INA § 244 with "cancellation of removal," a more limited form of discretionary relief. See

Tefel,180 F.3d at 1289.   The new INA § 240 states that the Attorney General may cancel removal, in the case of a permanent resident alien who is deportable, if the alien "has resided in the United States continuously for 7 years after having been admitted in any status" and, in the case of a non-permanent resident alien, if the alien "has been physically present in the United States for a continuous period of not less than 10 years." 8 U.S.C. § 1229b(a) and (b).[3]   Additionally, IIRIRA § 304(a)(3) changed the method for calculating an alien's period of continuous physical presence. See 8 U.S.C. § 1229b(d)(1) (Supp. III 1997).  The revised statute includes a so-called "stop-time" rule for determining an alien's eligibility for suspension of deportation or cancellation of removal.  Under this new statute, an alien's period of continuous physical presence in the United States is deemed to end once the alien is served with a "notice to appear" for removal proceedings.  IIRIRA § 304 states that "any period of continuous residence or continuous physical presence in the United states shall be deemed to end when the alien is served with a notice to appear under § 1229(a)."  INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1) (Supp. III 1997).

Additionally, IIRIRA § 309(c)(5) provides that an alien's continuous period of physical presence ends once deportation proceedings are commenced with the service of a notice to appear:

> Transitional Rule With Regard to Suspension of Deportation. Paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence of physical presence) shall apply to notices to appear issued before, on, or after the date of enactment of this Act [September 30, 1996].

IIRIRA § 309(c)(5), 110 Stat. 3009.

---

[3]The INS and Petitioner agree that Petitioner is subject to a seven year period of continuous physical presence requirement.

Subsequent to the enactment of the IIRIRA, on November 19, 1997, the Nicaraguan Adjustment and Central American Relief Act ("NACARA") Pub. L. 105-100, 111 Stat. 2160 (1997), amended by Pub. L. No. 105-139, 111 Stat. 2644 (1997), was signed into law. NACARA clarifies IIRIRA § 304(a)(3), by providing that the "stop-time" rule applies to orders to show cause issued before, on, or after the IIRIRA's enactment date. Section 203(a)(1) of NACARA amends IIRIRA § 309(c)(5) and changes the language "notices to appear" to "orders to show cause." Section 203(a)(1) of NACARA states as follows:

> Subject to subparagraphs (B) and (C), paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to orders to show cause (including those referred to in section 242(B)(a)(1) of the Immigration and Nationality Act, as in effect before the Title III-A effective date), issued before, on, or after the date of the enactment of this Act.

IIRIRA § 309(c)(5)(A), as amended by NACARA § 203(a)(1), 8 U.S.C. § 1101 note (Supp. III 1997).

Facts and Procedural History

On April 30, 1986, the INS issued an OSC alleging that Petitioner, a native citizen of Hong Kong, entered the United States in New York City, New York, on November 29, 1981, as a visitor for pleasure, that she was authorized to remain in the United States until January 15, 1982, that she remained in the United States without the authority of the INS, and that she was subject to deportation pursuant to § 241(a)(2) of the INA. See Administrative Record ("AR") at 581.

A hearing was held before an IJ on September 8, 1987. The IJ found that Petitioner was deportable on the charges as stated in the OSC and ordered that, in lieu of an order of deportation, Petitioner be granted voluntary departure on or before

November 8, 1987. Petitioner moved for reconsideration alleging that she was not properly served with the OSC, and thus, the IJ did not have jurisdiction to hear her case. The IJ denied her motion. See id. at 620-22.

On September 17, 1987, Petitioner filed, with the Executive Office of Immigration Review ("Executive Office"), a notice of appeal of the decision of the IJ alleging a failure to serve. In a letter to the Executive Office, dated December 14, 1987, District Counsel for the INS stated that he had requested that the Omaha district office of the INS investigate whether proper service of the OSC was made and that, pursuant to this investigation, it appeared "that there may be substance to the claims asserted by [Petitioner] on appeal and, accordingly, the INS respectfully [requests that Petitioner's] deportation proceedings be reopened and recalendared for further hearing." Id. at 606. The letter further stated that "if the attorney representing [Petitioner] is willing to withdraw his appeal, the reopening of the proceeding would be facilitated." Id. Consequently, on July 21, 1989, the INS and Petitioner submitted to the Executive Office a joint motion to remand the matter. Petitioner withdrew her appeal, conditioned upon remand.

On September 1, 1989, the Executive Office acknowledged the withdrawal of Petitioner's appeal and returned the case to the IJ. On October 17, 1990,[4] the parties entered into a stipulation which stated that Petitioner was "duly served with a copy of the Order to Show Cause." The stipulation further gave Petitioner until December 1, 1990, to submit an application for "suspension of deportation" with the Office of Immigration Judge.[5] On October 26, 1990, the IJ accepted the parties' stipulation. At

[4]An attorney for the INS signed the stipulation on October 10, 1990, and Petitioner's attorney signed the stipulation on October 17, 1990.

[5]The stipulation was made on a pre-printed form of the "Executive Office for Immigration Review, Office of the Immigration Judge." The parties, therefore, filled in blank spaces to specify the terms of their stipulation. See Administrative Record at

the time the parties entered into their stipulation, INA § 244, 8 U.S.C. 1254, allowed the Attorney General to suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence for an alien who had applied for suspension of deportation and who met the requirements of the statutory provision, including a continuous physical presence in the United States for not less than seven years preceding the date of application for suspension of deportation. As provided by the stipulation, Petitioner filed an application for suspension of deportation pursuant to INA § 244, 8 U.S.C. § 1254.

The IJ held a hearing on the merits of Petitioner's application for suspension of deportation. Petitioner alleged before the IJ that she would suffer extreme hardship if she were deported.[6] On April 9, 1991, the IJ issued a decision denying her application for suspension of deportation and granting her voluntary departure before January 2, 1992, pursuant to INA § 244(e), 8 U.S.C. § 1254(e). The IJ stated that, in the joint stipulation, Petitioner admitted that she "was properly served with the Order to Show Cause and [admitted] the truth in the allegations and charge and [conceded] deportability." Id. at 167. The IJ held that "given that deportability [was] not contested . . . deportability [was] clear, convincing, and unequivocal." Id. He further stated that in lieu of deportation, Petitioner was seeking suspension of deportation under INA § 244(a)(1), which requires that an individual seeking suspension of deportation establish that he or she had a "continuous physical presence in the United States, good moral character during the last seven years, and extreme hardship either to themselves and/or

_____

559-60.

[6]As a basis for hardship, Petitioner alleged that she purchased a home in Cedar Rapids; she and her husband had a mortgage in a restaurant; they supported themselves by working in the restaurant since 1985; they would lose their democratic freedoms when it is no longer a British protectorate if they were to return to Hong Kong; her daughters were students at the University of Iowa; the daughters would not be able to continue their education in Hong Kong; her daughters had a limited knowledge of Chinese, and her daughters had become Americanized.

to any of the enumerated parties." Id. The IJ stated, "[i]n regard to the physical presence requirement, the [INS] does not dispute that [Petitioner has] lived continuously in the United States for the past seven years, in fact, more than that, since 1981, almost ten years." Id.

The IJ found that both Petitioner's continuous physical presence and good moral character as required by INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) were established. However, after considering Petitioner's allegations of hardship, the IJ found that her level of hardship could not be characterized as "extreme." See id. at 169. The IJ, therefore, denied Petitioner's application for suspension of deportation, and granted Petitioner voluntary departure, provided she depart from the United States before January 2, 1992.

Decision of the BIA

On April 12, 1991, Petitioner appealed the IJ's decision with the BIA. In her appeal, Petitioner asserted that the IJ "failed to properly consider each of the hardship factors cumulatively in assessing the degree of hardship [she] would suffer." Id. at 155. While Petitioner's appeal was pending, Congress passed both IIRIRA § 304(a), INA § 240A(d), 8 U.S.C. § 1229b (Supp. 1997), which, as stated above, replaced "suspension of deportation" with "cancellation of removal" and which included the above described "stop-time" rule, and NACARA § 203(a)(1), 8 U.S.C. § 1101 note (Supp. III 1997), which stated that the "stop-time" rule is applicable to orders to show cause. The parties did not submit supplemental briefs.

The BIA issued a decision on June 5, 1997. The BIA acknowledged the joint stipulation that Petitioner "had acquired seven years' continual residence in the United States for purposes of suspension of deportation," but reasoned that:

[S]ince that time, the Board has held that service of an [OSC] serves to terminate an alien's period of continuous physical presence. (citations omitted) In light of the uncontroverted evidence of record, to which [Petitioner has] stipulated, [she has] failed to acquire the seven years' continuous physical presence required for statutory eligibility for suspension of deportation. (citation omitted) As the lack of requisite physical presence is dispositive, we need not consider whether [Petitioner has] met the other statutory requirements for suspension of deportation.

Id. at 24. The Executive Office, without explanation or discussion, assumed that Petitioner was served with the OSC on April 30, 1986, rather than on October 17, 1990, and applied the "stop-time" rule of the IIRIRA to make her ineligible for suspension of deportation because she had failed to acquire the requisite seven years' continuous physical presence prior to the service of the OSC. See id. Petitioner timely filed the present petition for judicial review.

## DISCUSSION

### Standard of Review

The factual findings of the BIA are subject to a substantial evidence standard of review. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (Elias-Zacarias); Daiga v. INS, 183 F.3d 797, 798 (8th Cir. 1999). The BIA's determination that Petitioner lacked the seven years' physical presence required for eligibility for suspension of deportation, "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Elias-Zacarias, 502 U.S. at 481, citing 8 U.S.C § 1105a(a)(4).[7] However, "[w]e review an agency's legal determinations *de*

_____

[7] 8 U.S.C. § 1105a(a)(4) states that "the petition [for judicial review] shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be

*novo*, according substantial deference to the agency's interpretation of the statutes and regulations it administers." Vue v. INS, 92 F.3d 696, 699 (8th Cir. 1996). This latter standard governs our review of the BIA's conclusion that the "stop-time" provision of the IIRIRA applies to Petitioner. Stop-Time Rule's Applicability

Petitioner contends that the IIRIRA and NACARA amendments are not applicable to her, and the INS argues the contrary. In Afolayan v. INS, 2000 WL 1010775 (8th Cir. July 24, 2000) (Afolayan), the Eighth Circuit addressed this issue and stated that, "[t]he Supreme Court articulated a multipart test for determining the retroactivity of a statute" in Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994) (Landgraf). Pursuant to the first part of the Landgraf test, this court's first task is to determine whether "Congress clearly intended a retroactive effect" for the stop-time rule. Afolayan, 2000 WL 1010775 at *2. "If congress has expressed a preference for retroactivity, then the court must adhere to congressional intent." Id.

Examining the statute's language, the court in Afolayan concluded that, as a general rule, persons in deportation or exclusion proceedings that began prior to April 1, 1997, are not subject to the changes made by the IIRIRA. See id. See also Astrero v. INS, 104 F.3d 264, 266 (9th Cir. 1996), citing IIRIRA § 309(c)(1). This general grandfathering provision does not apply, however, where the statute expressly provides otherwise. See id. NACARA § 203(a)(1) expressly provides that the "stop-time" rule applies to applications for suspension of deportation which applications were pending in the administrative process when the IIRRA was enacted. See Tefel, 180 F.3d at 1292, 1301-02; Matter of Nolasco-Tofino, Int. Dec. 3385, 1999 WL 218466 (BIA Apr. 15, 1999). Petitioner's application for suspension of deportation was pending in the administrative process when the IIRIRA was enacted. As this court stated in Afolayan, because the statutory language is plain and unambiguous and because this plain and unambiguous language "compels us to conclude that Congress clearly intended a

conclusive."

retroactive application of the stop-time measure . . . <u>Landgraf</u> requires no further examination of this issue." <u>Afolayan</u>, 2000 WL 1010775 at *3. We, therefore, affirm the decision of the BIA that the "stop-time" rule applies retroactively to Petitioner.

<u>Effective Date of Sevice of the OCS</u>

Because the "stop-time" rule of the IIRIRA applies to Petitioner's deportation proceedings, the effective date of the service of the OSC is critical to the disposition of this matter. Petitioner contends that the effective date of service of the OSC was October 17, 1990, the date on which she entered the stipulation with the INS, which stipulation acknowledged that she was served with the OSC. Assuming that October 17, 1990, is the effective date of service, Petitioner argues that she had more than seven years of continuous physical presence as required by this statute. Petitioner further argues that, although the stipulation was silent as to the date service occurred, the applicable statutes at the time the parties entered into the stipulation did not make this date significant because eligibility for suspension of deportation was dependent on the accrual of seven years of continuous physical presence prior to the filing of the application for the suspension, rather than the date of service of the OSC. Under such circumstances, Petitioner argues, there was no need to include in the stipulation the fact that the effective date of service was October 17, 1990. Petitioner further argues that, when a stipulation is silent as to one of its terms, it should not be construed to create an "admission of fact obviously intended to be controverted or waiver of right not plainly intended to be relinquished." Brief for Petitioner at 9.

The INS contends that the effective date of service of the OSC was April 30, 1986, the date the OSC was initially issued, and that Petitioner did not have the required seven years of continuous physical presence prior to this date. In support of this position the INS refers to Petitioner's brief to the BIA, filed prior to the enactment of the IIRIRA, in which she stated that the OSC was served on April 30, 1986. However, we hold that Petitioner's reference in her brief to the BIA to April 30, 1986,

as the date of service was argument of counsel and not evidence.  See, e.g., Sublett v. Dormire, 217 F.3d 598 (8th Cir. 2000).

The INS takes the position that service was effective on April 30. 1986 despite its acknowledgment in a letter to the Executive Office on December 14, 1987, that "there may be substance" to Petitioner's claim that she had not been served with the OSC. AR at 606.  The INS's position contradicts its own internal investigation as expressed in its letter of December 14, 1987.  Additionally, the stipulation between the parties was made on an INS pre-printed form, the first paragraph of which acknowledges service.  It is apparent that one purpose of the form is to cure ineffective service so that parties can proceed on the merits of an application for suspension of deportation.  In seeking to determine the intention of the parties when entering into the stipulation, it would be inconsistent with the remand of the matter to the IJ, pursuant to the initiative of INS and to the resultant withdrawal of Petitioner's appeal, to find that the parties intended that service of the OSC was effective on April 30, 1986, rather than on October 17, 1990.  In agreement with Petitioner, we find that because the date of service of an OSC was not statutorily significant on the date that the parties entered into their stipulation, the parties had no reason  to accurately articulate the effective date of service in their stipulation.  Significantly, the BIA never made an explicit finding that service occurred in April of 1986.  The BIA merely concluded that Petitioner did not have the requisite seven years of continuous physical presence because that period was terminated upon service of the OSC.

Additionally, service which is faulty may be cured by a stipulation of the parties. See United States v. Gluklick, 801 F.2d 834, 836-37 (6th Cir. 1986).  The date on which a party agrees to accept service is the date that service is effectuated. See id. at 837.  In the present case, the parties entered into a stipulation which acknowledged service but was silent as to the date it occurred.  Absent evidence to the contrary, we conclude that the parties intended the service to become effective on the date on which the stipulation was entered.

Based on the foregoing, we find that the administrative record establishes that the parties intended that the effective date of service of the OSC was October 17, 1990, and that a reasonable fact finder could not find otherwise. We, therefore, hold that the decision of the BIA is not supported by substantial evidence on the record as a whole. Because Petitioner was served with the OSC on October 17, 1990, we hold that she had seven years of continuous physical presence in the United States prior to that date and that she is, therefore, eligible for suspension of deportation, provided that she meets the applicable criteria, including extreme hardship.

## CONCLUSION

We hold that the BIA did not err in holding that "stop-time" rule of IIRIRA § 309(c)(5) applies to Petitioner. However, we further hold that the BIA erred in finding that Petitioner did not have seven years' physical presence prior to service of the OSC. Rather, we hold that Petitioner was served with the OSC on October 17, 1990, the date upon which the parties entered into their stipulation, and that, upon that date, she had the seven years' physical presence required for statutory eligibility for suspension of deportation. For the foregoing reasons, we grant the petition for review, vacate the order of the BIA, and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.