# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1774

_____

Luz Llapa-Sinchi,        *
                    *
         Petitioner,      *
                    *   Petition for Review from
      v.                  *   the Board of Immigration Appeals.
                    *
Michael B. Mukasey,      *
Attorney General of the United States,    *
                    *
         Respondent.      *
                    *
                    *

_____

Submitted:  December 10, 2007
Filed:  March 28, 2008

_____

Before BYE, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Luz Llapa-Sinchi, who entered the United States illegally and was ordered deportable *in absentia*, petitions this court to review a Board of Immigration Appeals' decision finding her ineligible for a suspension of deportation. She is eligible for a suspension of deportation only if she was properly served with notice of her deportation hearing. The government served Llapa-Sinchi with notice, but she was only fourteen years old at the time. The government did not serve additional notice on a responsible adult. The crux of the dispute is whether the government's service

on Llapa-Sinchi alone was proper service and consistent with due process. The BIA determined the government properly served Llapa-Sinchi with notice. We affirm.

I.    Background

Llapa-Sinchi, born in 1980, is a citizen and national of Ecuador. She illegally entered the United States in 1995, when she was fourteen years old. On the same day she entered the country, the government served her in Arizona with an Order To Show Cause that set forth the charge of deportability because she entered without inspection. The Order To Show Cause was in both English and Spanish, and the document indicated that a government official reviewed the document with Llapa-Sinchi in both languages. The government did not serve anyone else with the Order To Show Cause. The government released her to a local legal-assistance organization, which contacted her brother-in-law, who lived in Minnesota. He wired money, enabling Llapa-Sinchi to travel to Minnesota. Two months later, Llapa-Sinchi's brother-in-law received a letter offering a change of venue for the hearing. He signed it, and an immigration court approved a change of venue to the jurisdiction of Chicago, Illinois, sitting in Bloomington, Minnesota. Llapa-Sinchi failed to appear for her hearing, and an immigration judge ordered her deported *in absentia*.

Eight years later, immigration officials arrested Llapa-Sinchi. She filed a motion to reopen her petition. At the time Llapa-Sinchi was served, immigration law allowed the Attorney General to suspend an individual's deportation and adjust his or her status to that of a lawful permanent resident. 8 U.S.C. § 1254(a)(1) (1994).[1] With certain exceptions not applicable here, the Attorney General could suspend the deportation of an individual only if the individual had been "physically present in the United States for a continuous period of not less than seven years," if the individual was "of good moral character" during this time, and if "deportation would . . . result

_____

[1]This statute has since been repealed.

-2-

in extreme hardship" to the individual, "or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." Id.; see Tang v. INS, 223 F.3d 713, 715 (8th Cir. 2000) (citing provision). The period of continuous physical presence ended, however, when the individual was properly served with a notice to appear for deportation proceedings. 8 U.S.C. § 1229b(d)(1); see Tang, 223 F.3d at 716, 719 (explaining the stop-time provision, enacted in 1996, and holding it applies retroactively).

The BIA determined that Llapa-Sinchi "deserved a favorable exercise of [its] discretion" to grant a suspension of deportation. However, the BIA determined Llapa-Sinchi was ineligible for a suspension of deportation; she did not establish the requisite period of physical presence because the period ended when she was properly served with notice to appear for deportation proceedings on the day she entered the country.

The BIA determined Llapa-Sinchi's service was proper and explained 8 C.F.R. § 103.5a(c)(2)(ii) requires service on an alternative party only for minors younger than fourteen years old. This regulation specifically provides that service "shall be made upon the person with whom . . . the minor resides" when the minor is younger than fourteen years old. 8 C.F.R. § 103.5a(c)(2)(ii). The regulations are silent regarding service for minors fourteen years old and older. Thus, the BIA reasoned, those between fourteen and eighteen years old are governed by the general notice provision, which requires that notice "shall be given in person to the alien." 8 U.S.C. § 1252b(a)(1) (1994).[2]

---

[2]This statute has since been repealed.

Llapa-Sinchi argues she was not properly served with notice for two reasons.[3] She alleges the government violated her due-process rights because it served only her, as a minor, and not an adult. She also alleges the BIA and this court are bound by a Ninth Circuit case holding that service to minor aliens alone is insufficient for proper notice.

II.    Discussion

"[W]e review an agency's legal determinations de novo, according substantial deference to the agency's interpretation of the statutes and regulations it administers." Tang, 223 F.3d at 718–19 (quotation omitted). We thus review de novo the "the BIA's conclusion that the 'stop-time' provision . . . applies to [the] [p]etitioner." Id. at 719.

The BIA determined the government properly served Llapa-Sinchi even though it did not serve a responsible adult, because she was fourteen years old or older at the time and service was thus governed by the general notice provision. See 8 U.S.C. § 1254b(a)(1) (1994). Only if the minor is younger than fourteen years old must the government also serve an adult. 8 C.F.R. § 103.5a(c)(2). We defer to the BIA's reasonable interpretation of those regulations and hold that the government properly served Llapa-Sinchi with notice.

We also hold 8 C.F.R. § 103.5a(c)(2)(ii) does not violate the due process clause. We review constitutional issues de novo. See Coal. for Fair and Equitable Reg. of Docks on the Lake of the Ozarks v. Fed. Energy Reg. Comm'n, 297 F.3d 771, 778 (8th Cir. 2002) (noting that although "we accord substantial deference to an agency's

---

[3]In her brief, Llapa-Sinchi also argued the government was equitably estopped from arguing she was properly served. In oral arguments, however, Llapa-Sinchi waived this argument. Therefore, we do not address it.

interpretation of its own regulation, . . . we review de novo constitutional questions, such as . . . due process claims").

Llapa-Sinchi has not argued that particular facts surrounding her service of process caused it to run afoul of due process; her arguments are based only on her status as a minor. We decline Llapa-Sinchi's invitation to adopt a per se rule that service to minors alone always violates the constitution.

Minors can be responsible for their own legal status and can waive their constitutional rights. Courts have repeatedly held this, and statutes have long allowed it. The Supreme Court has held minors can be responsible for waiving their right to appeal deportation and custody determinations. Reno v. Flores, 507 U.S. 292, 308–09 (1993) (upholding, against a facial challenge, a law allowing all minors to waive their right to appeal those determinations). The Court said it was unwilling to presume all minors are "too young or too ignorant to exercise that right." Id. A seventeen year old can waive rights guaranteed by Miranda v. Arizona, 384 U.S. 436, 444 (1966), even if his parents are present and not adequately advised of the rights. United States v. White Bear, 668 F.2d 409, 411–12 (8th Cir. 1982). A sixteen year old can waive his right to an appeal, Little v. Lockhart, 868 F.2d 989, 992 (8th Cir. 1989), and a fifteen year old can waive his right to a jury trial, Cotton v. United States, 446 F.2d 107, 110 (8th Cir. 1971). Many state laws have long allowed personal service of a summons on minors as young as fourteen years old. See Mo. Sup. Ct. R. 54.13 (allowing personal service on any individual); Minn. R. Civ. P. 4.03(a) (allowing personal service on fourteen year olds); Neb. Rev. Stat. § 25-508.01(1) (same); Ark. R. Civ. P. 4(d)(2) (same); N.D. R. Civ. P. 4(d)(2)(A) (same). These cases and statutes indicate minors can be required to navigate through the justice system and make decisions affecting their rights without running afoul of due process. Likewise, without further evidence that the service in this case raised constitutional problems, it is not inconsistent with due process for Llapa-Sinchi to be the sole recipient of notice.

The Ninth Circuit interpreted 8 C.F.R. 103.5a(c)(2)(ii) differently to avoid "serious constitutional due process questions." Flores-Chavez v. Ashcroft, 362 F.3d 1150, 1162 (9th Cir. 2004). The Ninth Circuit looked to another provision of the regulations, 8 C.F.R. § 242.24, which requires that the government release juvenile aliens to a relative or, if the relatives and those appointed by relatives are unavailable, to an adult "who executes an agreement to care for the juvenile's well-being and to ensure the juvenile's presence at all future proceedings before the INS or an immigration judge." 8 C.F.R. § 242.24(b)(4) (1994). The court held it would be inconsistent for the regulations to require that minors older than fourteen be released to a competent adult who takes responsibility for the minor but to not require that the adult be served with notice. Flores-Chavez, 362 F.3d at 1163.

Unlike the Ninth Circuit, we do not find the regulations to be inconsistent, and we do not find the Ninth Circuit's reasoning entirely persuasive. The purpose of the notice provision is to let individuals know the details of their legal proceedings. The purpose of the release provision, however, is not to provide knowledge, but to provide assistance to minors in a foreign land, perhaps for the first time. It is therefore logical for the regulations to provide that minors entering the country illegally can be responsible for receiving notice regarding their court proceedings and yet also provide that minors may need assistance from adults to obtain basic necessities.

Contrary to Llapa-Sinchi's arguments, we conclude we are not bound by Ninth Circuit case law interpreting BIA regulations. In support of her argument, Llapa-Sinchi cites cases in which courts considered whether to apply the law of another circuit in reviewing BIA opinions. In these cases, courts considered this issue—whether to apply the law of another circuit—largely because the venue provision in effect at the time made it unclear to the BIA which circuit would be reviewing its decision. See Rosendo-Ramirez v. INS, 32 F.3d 1085, 1094 (7th Cir. 1994) (noting the venue provisions "require the BIA to live with uncertainty of which court may review its decisions, and us to live with the strange situation of being asked

to review a case that has applied another circuit's law); Morel v. INS, 90 F.3d 833, 837 (3d Cir. 1996) (reversed on other grounds) (noting the venue statute provides venue is proper in two circuits); Maldonado-Cruz v. INS, 883 F.2d 788, 790–91 (9th Cir. 1989) (abrogated on other grounds) (same). Under the previous venue provision, BIA decisions could be reviewed either in the circuit where the administrative proceedings were held or where the petitioner resided. 8 U.S.C. § 1105a(a)(2) (1994). However, the venue provision is no longer unclear, as the new provision provides that venue is proper only in one circuit—where the administrative hearings were completed. 8 U.S.C. § 1252(2)(b)(2). Thus, the primary justification for considering whether to apply the law of another circuit no longer exists.

Furthermore, in none of these cases did a court hold it was bound by another circuit's law. See Rosendo-Ramirez, 32 F.3d at 1094 ("[W]e are obliged to review the BIA's decision in accordance with our own law."); Morel, 90 F.3d at 836–37 (reversed on other grounds) ("[A]ll of the other appellate courts confronted with a similar situation have applied the law of their own circuits."); Maldonado-Cruz, 883 F.2d at 790–91 (abrogated on other grounds) (determining Ninth Circuit law should apply because it would prevent the INS from forum shopping and because the petitioner did not have any contacts with the other circuit where venue was appropriate). Neither this court nor the BIA in this case is bound by Ninth Circuit precedent.

III.   Conclusion

Because Llapa-Sinchi was properly served with notice, the BIA correctly found her ineligible for a suspension of deportation, and we deny her petition for review.

-7-

BYE, Circuit Judge, dissenting.

I respectfully dissent. I would apply the law of the Ninth Circuit in determining whether the service of process upon Luz Llapa-Sinchi, which occurred in Arizona, was valid and proper. Under Ninth Circuit law, the service of process upon her alone when she was fourteen years old would be invalid, and she would be eligible for suspension of deportation. See Flores-Chavez v. Ashcroft, 362 F.3d 1150, 1157-63 (9th Cir. 2004) (concluding service of process upon a fifteen year old was invalid because of a conflict between two immigration regulations, and to avoid serious due process concerns).

We generally disfavor adopting rules which create an incentive for parties to engage in forum shopping. E.g., Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH, 495 F.3d 582, 589 (8th Cir. 2007); Bldg. Erection Servs., Inc. v. JLG, Inc., 376 F.3d 800, 805 (8th Cir. 2004); Rajala v. Donnelly Meiners Jordan Kline, P.C., 193 F.3d 925, 928 (8th Cir. 1999); see also Singh v. Gonzales, 495 F.3d 553, 558 (8th Cir. 2007) (referring to an alien's effort to engage in forum shopping as a reason supporting an immigration judge's adverse credibility determination).

Llapa-Sinchi argues the rule adopted by the Court – which applies our circuit's law to a transferred immigration proceeding which commenced with service of process in the Ninth Circuit – will encourage forum shopping. I agree. Immigrants properly served with a notice to appear within the exterior boundaries of the Eighth Circuit can transfer their cases to the Ninth Circuit, and thereafter challenge the validity of service. Likewise, the government can effectively "fix" invalid service which occurs within the boundaries of the Ninth Circuit by transferring an immigrant's case to another circuit which recognizes the service as valid.

For the limited purpose of determining the validity of service, I believe the law of the circuit where service is accomplished should govern. Any other rule

encourages and facilitates forum shopping by both parties. I therefore respectfully dissent.

_____