NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0479n.06

Case No. 18-3152

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Sep 24, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALDO JIMENEZ-CASTRO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| JEFFERSON B. SESSIONS, III, Attorney | ) | APPEALS |
| General, | ) | |
| | ) | |
| Respondent. | ) | |

**O P I N I O N**

BEFORE: SUTTON, McKEAGUE, and THAPAR, Circuit Judges.

**McKEAGUE, Circuit Judge.** In December 2016, Aldo Jimenez-Castro, a citizen of Guatemala, entered the United States without permission. After failing to appear for a hearing before an immigration judge several months later, he was ordered removed *in absentia*. Despite Jimenez-Castro's contention that he missed his hearing due to exceptional circumstances, the immigration judge declined to reopen the proceedings. The Board of Immigration Appeals (BIA) affirmed the immigration judge's decision. Jimenez-Castro now appeals. Finding no abuse of discretion, we affirm.

**I**

When Jimenez-Castro arrived in the United States, he was thirteen years old and unaccompanied by an adult. He was placed in the custody of the Office of Refugee Resettlement

(ORR). Several days later, the Department of Homeland Security (DHS) served Jimenez-Castro with a Notice to Appear in immigration court at a date and time to be determined in the future. The Notice charged Jimenez-Castro with removability based on his entry and presence in the United States without admission or parole.

After Jimenez-Castro turned fourteen, ORR released him into the care of his older brother, Guadalupe. And in June 2017, while he was fourteen years old and in his brother's care, Jimenez-Castro received another Notice to Appear. This one directed him to appear in immigration court on June 27, 2017. But June 27 came, and Jimenez-Castro did not appear. Still, the hearing went on without him. At its conclusion, the immigration judge determined that Jimenez-Castro was removable and ordered him removed *in absentia*.

On August 1, 2017, Jimenez-Castro moved to set aside the order of removal and reopen his proceedings. He argued that he missed his hearing because his brother and guardian, Guadalupe, "forgot the date" of the hearing and thus failed to ensure Jimenez-Castro's appearance. The brothers submitted affidavits in support of the motion. They explained that they both read the Notice to Appear, that Jimenez-Castro called DHS to verify that his hearing was on June 27, and that Jimenez-Castro then told Guadalupe that his hearing was on June 27. Unfortunately for Jimenez-Castro, he also told Guadalupe that June 27 was a Wednesday, even though it was really a Tuesday. And, as Guadalupe explains, after his brother mentioned Wednesday, "that [day] was what stuck in [his] mind." He made plans to take off work on Wednesday to take his brother to the hearing that day. It was only later on Tuesday—when Guadalupe was watching the news and "saw that it said June 27, 2017" on the television screen—that Guadalupe realized their mistake. The brothers did not immediately call a lawyer or follow up with the immigration court. As Guadalupe tells it, he assumed that Jimenez-Castro would receive a new Notice in the mail with

an updated hearing date. So, he waited for one to arrive. What Jimenez-Castro received instead was an order of removal *in absentia*.

After receiving the removal order, Jimenez-Castro contacted a lawyer, who moved to reopen the removal proceedings. The immigration judge denied the motion, finding that Jimenez-Castro failed to demonstrate that "exceptional circumstances" excused his absence from the hearing. Jimenez-Castro appealed, and the BIA affirmed.

## II

### A. Standard of Review

We review the BIA's decision, as the final agency determination, under an abuse-of-discretion standard. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009); *Acquaah v. Holder*, 589 F.3d 332, 334 (6th Cir. 2009). The BIA abuses its discretion when its decision is unsupported by "a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination against a particular race or group." *Thompson v. Lynch*, 788 F.3d 638, 642 (6th Cir. 2015) (citation omitted). The party seeking to reopen removal proceedings bears a "heavy burden" to show that the BIA abused its broad discretion to grant or deny such motions. *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) (citation omitted).

### B. Analysis

Under the Immigration and Nationality Act (INA), a person who receives notice of a removal hearing but fails to appear may be ordered removed *in absentia* if DHS establishes by clear and convincing evidence that the individual had notice and is removable. 8 U.S.C. § 1229a(b)(5)(A). The order may be set aside only if the individual demonstrates (among other

things) that he failed to appear because of "exceptional circumstances." *Id.* § 1229a(b)(5)(C).[1]

The INA defines "exceptional circumstances" as "circumstances . . . beyond the control of the

alien," including "battery or extreme cruelty to the alien or any child or parent of the alien, serious

illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not

including less compelling circumstances." *Id.* § 1229a(e)(1). The exceptional-circumstances

standard sets a high bar that "will be met in only rare cases." *Kaweesa v. Gonzales*, 450 F.3d 62,

68 (1st Cir. 2006) (quoting *Herbert v. Ashcroft*, 325 F.3d 68, 72 (1st Cir. 2003) (internal quotation

marks omitted)).

Whether exceptional circumstances exist depends on the totality of the circumstances

surrounding the failure to appear. *See Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003); *Matter of

W-F-*, 21 I. & N. Dec. 503, 509 (BIA 1996). The totality-of-circumstances approach may take into

account factors such as the individual's promptness in filing the motion to reopen, eligibility for

asylum or other forms of relief, and the harm the individual would suffer if the motion to reopen

were denied. *See Kaweesa*, 450 F.3d at 68–69 (collecting cases); *Acquaah*, 589 F.3d at 336–37.

Consistent with this totality-of-circumstances approach, a "good faith but mistaken belief

as to the correct date" of a hearing, without more, generally does not rise to the level of an

exceptional circumstance. *Acquaah*, 589 F.3d at 335–36 (citing cases from the First, Seventh, and

Eighth Circuits and finding this general proposition supported by the "weight of authority"); *see

also Mhaidli v. Holder*, 381 F. App'x 521, 524–25 (6th Cir. 2010) (stating that a misunderstanding

about the date of a hearing is "a 'less compelling circumstance[]' than is required by the standard

---

[1] Jimenez-Castro argues that he need only provide "reasonable cause" for his failure to appear, but the cases he cites clarify that that standard applies in exclusionary, rather than removal, proceedings. *See Matter of N-B-*, 22 I & N Dec. 590, 593 (BIA 1999); 8 C.F.R. § 1003.23(b)(4) (distinguishing between removal, exclusion, and deportation proceedings).

established by 8 U.S.C. § 1229a(e)(1)" (alteration in original) (citation omitted)); *Uriostegui v. Gonzales*, 415 F.3d 660, 663 (7th Cir. 2005) (holding that such a "mistake falls short of the exceptional circumstances that have excused nonappearance in other cases" and "is nowhere near the illustrative examples given in the statute" (citations omitted)); *but see Barseghian v. INS*, 14 F. App'x 806, 807 (9th Cir. 2001) (misunderstanding as to the correct date communicated by interpreter in individual's native language was an exceptional circumstance excusing absence).

The BIA relied heavily on this principle in denying Jimenez-Castro's motion to reopen. It reasoned that, according to *Acquaah*, 589 F.3d at 355, "[a] scheduling mistake does not rise to the level of extraordinary circumstances." R. 3–5. The BIA pointed out that Jimenez-Castro did not argue that he suffered from any "illness, incapacity, or battery or extreme cruelty"—the types of circumstances identified as "exceptional" by the controlling statute. *Id.* (citing 8 U.S.C. § 1229a(e)(1)). Additionally, the BIA rejected Jimenez-Castro's assertion that he was eligible for asylum and adjustment of status, finding that he presented no evidence to the immigration judge or the BIA supporting such eligibility. *Id.* After considering these factors, the BIA concluded that no exceptional circumstances excused Jimenez-Castro's absence.

Jimenez-Castro protests that conclusion. The crux of his claim is that, because of his age, he is without "legal capacity" and is completely dependent on his brother to manage his schedule and bring him to hearings. He says his age (or, as he puts it, lack of "legal capacity") makes his failure to appear beyond his control and, therefore, an exceptional circumstance.

But age alone makes Jimenez-Castro no different from any other fourteen-year-old. Accepting his argument, then, would mandate that a minor's failure to appear constitutes an exceptional circumstance in every case, regardless of the particular facts. But such a per-se rule would eschew the totality-of-circumstances approach that the immigration judge and the BIA are

required to take when determining whether exceptional circumstances exist. *Denko*, 351 F.3d at 723. We therefore cannot endorse it.

Moreover, to the extent Jimenez-Castro asserts he lacks legal capacity to manage his schedule simply because he is a minor, that argument is unconvincing. The law has long recognized that "[m]inors can be responsible for their own legal status . . . ." *Llapa-Sinchi v. Mukasey*, 520 F.3d 897, 900 (8th Cir. 2008). They can waive their constitutional rights to appeal deportation and custody determinations, to remain silent during a custodial interrogation, to have a jury trial, and to appeal a conviction. *Id.* (collecting cases). Many states even allow personal service on minors as young as fourteen. *Id.* Federal immigration law does, too. 8 C.F.R. § 103.8(c)(ii) (requiring service on someone other than minor only if minor is younger than fourteen); *see also Llapa-Sinchi*, 520 F.3d at 900 (concluding that "it is not inconsistent with due process for [a fourteen-year-old] to be the sole recipient of notice"); *Lopez-Dubon v. Holder*, 609 F.3d 642, 645–46 (5th Cir. 2010) (holding the same with respect to a seventeen-year-old); *Matter of Cubor-Cruz*, 25 I & N Dec. 470, 473 (BIA 2011) (service on fourteen-year-old effective even though adult not served as well); *but see Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1162 (9th Cir. 2004) (finding service on any minor, without service on adult, is ineffective). Therefore, the BIA did not abuse its discretion when it declined to hold that Jimenez-Castro's young age rendered him without "legal capacity" or counted as an "exceptional circumstance" justifying his absence.

The BIA considered another factor when denying his motion to reopen: eligibility to remain in the United States. Although Jimenez-Castro argued that he was eligible for Special Juvenile Status or other forms of discretionary relief, the BIA found that he failed to present any evidence to support eligibility. R. 3–5 ("[T]he respondent has provided no evidence before the Immigration

Judge or on appeal of his eligibility for any such relief, including the pendency of any filed applications . . . ."). That gave the BIA another reason to deny the motion to reopen.

Jimenez-Castro's failure to present such evidence makes his case distinct from *Kaweesa*, a First Circuit case to which he points as proof that the BIA abused its discretion here. 450 F.3d 62. In *Kaweesa*, the First Circuit held that the BIA abused its discretion when it denied a motion to reopen without considering the substantial amount of evidence supporting the petitioner's then-pending applications for asylum and withholding of removal. *Id.* at 70–71. That evidence demonstrated she was likely to face torture and rape if returned to her home country. *Id.* Those consequences, the court determined, were "much greater than mere deportation," and showed that the petitioner had a viable defense against removal. *Id.* at 71. Therefore, according to the Firth Circuit, the BIA's dismissal of that evidence was an abuse of discretion.

Here, however, the BIA considered Jimenez-Castro's assertions that he was eligible for relief from removal but found that he failed to produce any evidence to support that claim. His failure to do so suggests that his motion, and this appeal, are attempts at delaying an inevitable deportation—exactly what the statute was designed to deter. *See Camaj v. Holder*, 625 F.3d 988, 993 (6th Cir. 2010) (explaining that Congress adopted the high exceptional-circumstances standard to solve the "serious problem" of individuals failing to appear, which effectively extended their stay in the country while "impos[ing] considerable costs on [DHS] and disrupt[ing] its efforts to promptly schedule and hear requests for discretionary relief from removal" (quoting *Herbert*, 325 F.3d at 71)).

Congress set the exceptional-circumstances bar high. While the statute leaves room for discretion, that discretion is not without limits. The statute directs immigration courts not to reopen proceedings unless something "not . . . less compelling" than its enumerated examples—battery,

extreme cruelty, or serious illness or death of a spouse, child, or parent—kept the individual from appearing. 8 U.S.C. § 1229a(e)(1). That language cabins the BIA's exercise of discretion, and it cabins this court's review, too. Certainly, the brothers' confusion about the hearing date carried an extremely unfortunate consequence for Jimenez-Castro. Still, date confusion itself generally comes "nowhere near the illustrative examples" considered "exceptional" by the statute. *Uriostegui*, 415 F.3d at 663–64. And because our review of the BIA's decision confirms that it considered the totality of the circumstances when it denied Jimenez-Castro's motion to reopen— including the facts surrounding the brothers' date confusion, Jimenez-Castro's age, and eligibility for relief—we cannot say its decision was an abuse of discretion.

Finally, Jimenez-Castro asserts that the BIA violated his procedural due process rights in refusing to reopen his proceedings. Because Jimenez-Castro did not raise this argument before the immigration judge or the BIA, however, the INA's exhaustion requirement bars the court from considering it. *See Gaye v. Lynch*, 788 F.3d 519, 527–28 (6th Cir. 2015) (citing 8 U.S.C. § 1252(d)(1)); *Feto v. Gonzales*, 433 F.3d 907, 912 (7th Cir. 2006). And, in any event, such claim would fail because he does not show that he was otherwise entitled to remain in the country. *Id.*; *see also Graham v. Mukasey*, 519 F.3d 546, 549–50 (6th Cir. 2008); *Huicochea-Gomez v. INS*, 237 F.3d 696, 699–700 (6th Cir. 2001).

### III

Finding no abuse of discretion, we **AFFIRM**.