56 F.3d 69
NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
 Henry Obozokhale OJEMOLON, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-2539
 United States Court of Appeals,
Eighth Circuit.
 Submitted: May 10, 1995
Filed: May 15, 1995
 
 Before BOWMAN, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Henry Obozokhale Ojemolon, a citizen of Nigeria, petitions for review of an order by the Board of Immigration Appeals (BIA) denying his request for voluntary departure. We deny his petition.
 
 
 2
 Ojemolon entered the United States on September 16, 1989, on a non-immigrant, one-month business visitor's visa; he overstayed after his visa expired. While working in Minneapolis as a taxi driver, Ojemolon was arrested after he attempted to use a fake temporary resident card to obtain a Social Security card under a modified version of his name. Ojemolon cooperated with investigators and admitted that he had attempted to obtain a Social Security card, but claimed that he thought the temporary resident card and a permanent resident stamp in his passport were both valid. The investigation determined that the card was counterfeit, and that Ojemolon's permanent resident stamp was invalid. Ojemolon pleaded guilty to knowingly possessing a false immigration identification document, in violation of 18 U.S.C. Sec. 1028(a)(4) and (b)(3), and was sentenced on December 26, 1991, to serve sixty days in prison.
 
 
 3
 That same day, the Immigration and Naturalization Service (INS) served him with a show cause order, which charged him with being deportable under Section 241(a)(1)(B) of the Immigration and Nationality Act (INA) (8 U.S.C. Sec. 1251(a)(1)(B)) based on his overstay and subsequent employment. After Ojemolon's release from prison, he conceded deportability, but requested that he be allowed to depart voluntarily pursuant to 8 U.S.C. Sec. 1254(e). In August 1993, a hearing was held at which Ojemolon and his current wife, an American citizen, testified.
 
 
 4
 The immigration judge found Ojemolon statutorily ineligible for voluntary departure because he lacked good moral character, as shown by his "flagrant disregard" of United States law, and his continuous pattern of deceptive conduct-including lying on his initial visa application, deciding to stay and work in the United States, purchasing false immigration documents, and using them to attempt to obtain a false Social Security card. The immigration judge also found that even if Ojemolon were statutorily eligible, he did not merit an exercise of discretion to allow him voluntary departure. The BIA affirmed the decision and dismissed Ojemolon's appeal. The BIA stated that the crime for which Ojemolon was convicted was one involving moral turpitude, but not one automatically precluding him from proving his good moral character.[1] Given the serious nature of Ojemolon's pattern of illegal conduct and the "dearth" of evidence about his good moral character, the BIA concluded that he was not statutorily eligible to depart voluntarily. The BIA stated that it did not have to reach the issue of whether Ojemolon would qualify for such departure as a matter of discretion.
 
 
 5
 Ojemolon bore the burden of proving his statutory eligibility for voluntary departure, and we review for substantial evidence the BIA's factual finding that he lacked the necessary moral character. See Rivera-Zurita v. INS, 946 F.2d 118, 120 (10th Cir. 1991). Voluntary departure is discretionary relief the Attorney General may grant to a deportable alien if the alien can show he will voluntarily depart at his own expense, and that he has been a person of good moral character for the five years preceding his application for voluntary departure. 8 U.S.C. Sec. 154(e). An alien can be found to lack good moral character for a non-exclusive list of reasons, and "[t]he fact that any person is not within any of the [listed reasons] shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. Sec. 1101(f).
 
 
 6
 The BIA correctly relied on this catch-all language of subsection (f). See Rashtabadi v. INS, 23 F.3d 1562, 1572 (9th Cir. 1994) (conviction which did not make alien automatically ineligible for voluntary departure could be considered under catch- all provision of Sec. 1101(f) to determine moral character). Given Ojemolon's pattern of deceptive conduct related to his attempts to remain in the United States, we conclude substantial evidence supports the BIA's finding that Ojemolon lacks the good moral character required to be statutorily eligible for voluntary departure.
 
 
 7
 Ojemolon's argument that he was precluded from presenting evidence of his good moral character is not properly before us, because he did not raise this argument before the BIA. See Margalli-Olvera v. INS, 43 F.3d 345, 350 (8th Cir. 1994). Moreover, a review of the hearing transcript and administrative record shows that he was not precluded from offering testimony or documentary evidence relevant to his good moral character; in fact, Ojemolon introduced a significant amount of documentary evidence. The immigration judge only limited introduction of testimony related to extraneous matters such as the validity of his second marriage and the hardship on him and his family if he were to be deported (which is relevant to a suspension of deportation, not voluntary departure), and Ojemolon did not object to this limitation.
 
 
 8
 Accordingly, Ojemolon's petition for review is denied.
 
 
 
 [1]
 It is uncontested that Ojemolon's conviction falls within the "petty-offense exception" found at 8 U.S.C. Sec.1182(a)(2)(A)(ii)(II)