# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1264
_____

Edy Uzor Ikenokwalu-White,     *
     *
     Petitioner - Appellant,     *
     *  On Petition for Review of a
     v.     *  Decision of the Board of
     *  Immigration Appeals.
Immigration and Naturalization     *
Service; John D. Aschroft, in his     *
official capacity as Attorney     *
General of the United States,     *
     *
     Respondents - Appellees.     *
     *

_____

Submitted: November 8, 2002
Filed: January 21, 2003
_____

Before MCMILLIAN and MELLOY, Circuit Judges, and FRANK,[1] District Judge.
_____

MELLOY, Circuit Judge.

In this immigration case the petitioner, Edy Uzor Ikenokwalu-White ("Ikenokwalu"), seeks review of a final order issued by the Board of Immigration

_____

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, sitting by designation.

Appeals ("the Board") which found that she did not qualify for suspension of deportation or voluntary departure. The Board held that Ikenokwalu had failed to establish her good moral character, a statutory prerequisite to the Attorney General's discretionary authority to suspend deportation or permit voluntary departure in lieu of deportation. After concluding that we have jurisdiction to review the Board's order, we reject Ikenokwalu's contention that the Board relied on impermissible factors in making its moral character determination and affirm its decision.

## I.

Ikenokwalu is a 44 year old native and citizen of Nigeria who entered the United States on August 21, 1977. She has a long history with the Immigration and Naturalization Service ("INS"), including two rescissions of permanent resident status. The instant proceedings commenced in 1995 when the INS issued an Order to Show Cause charging that Ikenokwalu was subject to deportation for, *inter alia*, overstaying her student visa. After hearings on the matter, an Immigration Judge found Ikenokwalu deportable and denied her applications for suspension of deportation under 8 U.S.C. § 1254(a)(3) and voluntary departure under 8 U.S.C. § 1254(e).[2] The Immigration Judge found that Ikenokwalu failed to establish that she was of good moral character and that her deportation would cause extreme hardship to herself or her family, both of which were statutory prerequisites to the Attorney General's discretionary suspension authority. See 8 U.S.C. § 1254(a)(3). The finding

---

[2] Statutory references to the Immigration and Naturalization Act ("INA"), as codified in Title 8 of the United States Code, will refer, in this opinion, to the version in effect at the time Ikenokwalu's deportation proceedings were initiated. Although the immigration laws were substantially overhauled by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, that law expressly states that the old law would generally remain applicable to then-pending proceedings such as these. See IIRIRA § 309(c)(1).

that Ikenokwalu lacked good moral character also meant she was statutorily ineligible for voluntary departure in lieu of deportation. See 8 U.S.C. § 1254(e).

Ikenokwalu appealed, and on December 14, 2001, the Board affirmed the Immigration Judge's order. The Board held that Ikenokwalu was "statutorily ineligible for suspension of deportation as she has failed to establish good moral character." Having so concluded, the Board found it unnecessary to address whether Ikenokwalu could show extreme hardship or whether she merited relief as a matter of discretion. The Board did not separately analyze the voluntary departure issue, but noted that the same evidence of lack of good moral character meant Ikenokwalu was also statutorily ineligible for voluntary departure. This appeal followed.

## II.

In this appeal, Ikenokwalu argues that the Board, and the Immigration Judge, relied on improper factors to conclude that she lacked the good moral character requisite to discretionary relief under 8 U.S.C. § 1254(a)(3) or 1254(e). Specifically, Ikenokwalu contends that the Board impermissibly relied on expunged convictions and conduct which occurred outside the three-year period for which good moral character was required. In response, the government argues that this court lacks jurisdiction to review the Board's moral character determination. If jurisdiction does exist, the government contends that the Board's consideration of Ikenokwalu's expunged convictions and prior conduct was proper, and that substantial evidence supports the Board's decision that Ikenokwalu failed to establish her good moral character.

A.

We first address, and reject, the government's contention that we lack jurisdiction over this matter. See Vasquez-Velezmoro v. INS, 281 F.3d 693, 695 (8th Cir. 2002) ("[T]his Court has jurisdiction to determine preliminary jurisdictional issues."). Because Ikenokwalu was placed in deportation proceedings before April 1, 1997, and the final order of deportation was issued after October 31, 1996, this case is governed by the IIRIRA transitional rules. See IIRIRA § 309(c)(4) (explaining applicability of "transitional changes in judicial review"). Thus, this court has jurisdiction under 8 U.S.C. § 1105a(a) *unless* the IIRIRA transitional rules preclude review. See IIRIRA § 309(c)(4)(E).

IIRIRA § 309(c)(4)(E) provides that appellate courts have jurisdiction to review nondiscretionary aspects of the Attorney General's suspension of deportation and voluntary departure determinations, but lack jurisdiction to review discretionary aspects of those decisions.[3] Accordingly, "[t]he exact basis for the denial . . . and the nature of the challenge to that denial are important to the issue of whether § 309(c)(4)(E) precludes jurisdiction." Bernal-Vallejo v. INS, 195 F.3d 56, 61 (1st Cir. 1999).

Ikenokwalu applied for suspension of deportation under Section 244(a) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1254(a)(3).[4] This

---

[3] IIRIRA § 309(c)(4)(E) states that "there shall be no appeal of any discretionary decision under section 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act (as in effect at the date of the enactment of this Act)." The suspension of deportation and voluntary departure denials at issue in this appeal fall within Section 244.

[4] Ikenokwalu also appeals the Board's denial of her application for voluntary departure under 8 U.S.C. § 1254(e). Prior to the Attorney General's exercise of

-4-

provision, added by the Violence Against Women Act of 1994, Title IV of Pub. L. No. 103-322, § 40703(a), 108 Stat. 1796, 1902-55, states that the Attorney General "may, in his discretion, suspend deportation" in cases where the alien:

(1) "has been physically present in the United States for a continuous period of not less than 3 years immediately preceding the date of such application;"[5]
(2) "has been battered or subjected to extreme cruelty in the United States by a spouse or parent who is a United States citizen . . . ;"
(3) "proves that during all of such time in the United States the alien was and is a person of good moral character;" and
(4) "is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or the alien's parent or child."

The moral character element at issue here is informed by INA § 101(f), 8 U.S.C. § 1101(f). That section lists seven categories, any one of which, if applicable, mandates a finding that the applicant for suspension of deportation lacks good moral character. See id.[6] For example, an applicant will be ineligible for suspension of

---

discretionary relief under Section 1254(e), the alien must, *inter alia*, establish good moral character for a period of five years preceding the application. Thus, in this case, our analysis and conclusions with regard to 8 U.S.C. § 1254(a)(3) are also dispositive of Ikenokwalu's appeal of the voluntary departure denial.

[5] Outside the context of the Violence Against Women Act, the generally applicable suspension of deportation provisions require the alien to prove either seven years or ten years of continuous physical presence in the United States. See 8 U.S.C. § 1254(a)(1), (a)(2).

[6] Section 1101(f) precludes a finding of good moral character where it is established that the alien: is a habitual drunkard; is a drug offender; derives his income principally from illegal gambling; has two or more gambling convictions; has given false testimony for the purpose of obtaining any benefits under the immigration

deportation if it is established that he or she is a habitual drunkard or an illegal gambler.  See id.  None of these per se categories is at issue here.  Section 1101(f) also includes a "catchall" category which states that "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."  Id.  It is under this catchall provision that the Immigration Judge and Board based their finding against Ikenokwalu.

The government argues that where, as here, the good moral character determination is based on Section 1101(f)'s catch-all provision, it is a discretionary determination that is not reviewable by this court under IIRIRA § 309(c)(4)(E).  This is an issue of first impression in this circuit.

Two circuits have discussed the "good moral character" element and concluded that although findings based on Section 1101(f)'s enumerated categories are reviewable, those made under the catchall provision are not.  See Bernal-Vallejo v. INS, 195 F.3d 56 (1st Cir. 1999);  Kalaw v. INS, 133 F.3d 1147 (9th Cir. 1997).  These courts make a distinction between the per se categories which require mere "application of law to factual determinations"–e.g., the alien does or does not have two prior convictions for gambling–and the catchall provision, which they view as inherently discretionary and thus unreviewable.  See Bernal-Vallejo, 195 F.3d at 62-63 ("[I]f a [Board] decision [on moral character] turned on a dispute about whether the applicant fit one of the per se categories, § 309(c)(4)(E) would not bar this court's review.  If, however, the determination of lack of good moral character was not based on the per se categories, then judicial review would be barred, for that determination

laws; has been in prison for 180 days or more during the statutory period; or has been convicted of an aggravated felony.  8 U.S.C. § 1101(f).  The government did not rely upon any of these categories in its case against Ikenokwalu.

would be a discretionary one."); <u>Kalaw</u>, 133 F.3d at 1151 ("Apart from the per se categories, however, whether an alien has good moral character is an inquiry appropriate for the Attorney General's discretion.").

As noted by Ikenokwalu, however, the moral character element was not essential to the above-noted decisions since, in each of those cases, that element was not in dispute. In each instance the Board found in favor of the alien on the good moral character element but against the alien on the "extreme hardship" element, which was subsequently held to be unreviewable. <u>See</u> <u>Bernal-Vallejo</u>, 195 F.3d at 63 ("Here, the denial of Bernal's application was based on a determination that he would not suffer extreme hardship if deported, . . ."); <u>Kalaw</u>, 133 F.3d at 1152-53 (reviewing the Board's decision that applicants had failed to satisfy the extreme hardship test). Accordingly, the effect of an adverse ruling on moral character was not squarely before the reviewing courts. Therefore, Ikenokwalu argues, the courts' jurisdictional discussions regarding the good moral character element were dicta not subject to the briefing and litigation process and should be found unpersuasive.

In this appeal, the question of jurisdiction is squarely before us because the Board's decision turned solely on the moral character element. After careful review of the relevant statutory language, the purposes underlying the statute, and the treatment of the issue by courts prior to enactment of the IIRIRA, we are persuaded that we have jurisdiction under 8 U.S.C. § 1105a(a) to review the Board's finding on moral character under any aspect of 8 U.S.C. § 1101(f). In other words, the determination that an alien has failed to establish good moral character under the catchall provision of Section 1101(f) is, like the per se categories, a question of applying the law to the facts and results in a nondiscretionary, reviewable determination.

In so concluding, we first note that there is a clear distinction between the statutory language used with respect to the extreme hardship element, which plainly and expressly recognizes the Attorney General's discretionary role, and that used with respect to the good moral character element, which contains no similar language. See Kalaw, 133 F.3d at 1152 (noting that "[t]he language of INA § 244(a)(1) . . . itself commits the [extreme hardship] determination to 'the opinion of the Attorney General'").[7] Second, we agree with Ikenokwalu that it would be anomalous to allow judicial review of a moral character determination to someone who was allegedly a habitual drunkard, with the attendant factual disputes that such a finding might involve, but to deny judicial review to someone in Ikenokwalu's position whose alleged misconduct was not severe enough to bring her within any of Section 1101(f)'s per se categories. And finally, we observe that the solid majority of pre-IIRIRA cases–including at least one unpublished case in this circuit–reviewed moral character determinations on a substantial evidence standard rather than for abuse of discretion.[8] We find these points compelling and hold that the moral character

---

[7] All circuits that have addressed the "extreme hardship" element have found it plain from the language of the statute that extreme hardship is a discretionary determination which is not reviewable by the judiciary. See, e.g., Al Najjar v. Ashcroft, 257 F.3d 1262, 1298 (11th Cir. 2001); Ramos v. INS, 246 F.3d 1264, 1267 (9th Cir. 2001); Escalera v. INS, 222 F.3d 753, 755-56 (10th Cir. 2000); Moosa v. INS, 171 F.3d 994, 1012-13 (5th Cir. 1999); Skutnik v. INS, 128 F.3d 512, 513-14 (7th Cir. 1997).

[8] See, e.g., Ojemolon v. INS, 56 F.3d 69 (8th Cir. 1995) (unpublished table decision) (examining analogous issue in voluntary departure context); Dulane v. INS, 46 F.3d 988, 999 (10th Cir. 1995) ("When reviewing the Board's ruling on an application for suspension of deportation, we apply a substantial evidence standard to its factual determinations as to whether the alien has established . . . good moral character."); Mabugat v. INS, 937 F.2d 426, 431 (9th Cir. 1991) (stating that moral character determinations are subject to substantial evidence review); Hernandez-Cordero v. INS, 819 F.2d 558, 560 (5th Cir. 1987) (same); Zamora-Garcia v. INS, 737 F.2d 488, 490 (5th Cir. 1984) (same). But see Torres-Guzman v. INS, 804 F.2d 531, 533 (9th Cir. 1986) (suggesting moral character determinations should be

determination under 8 U.S.C. § 1101(f), including one made under the catchall provision, is nondiscretionary and reviewable.

## B.

Turning to the merits of the appeal, Ikenokwalu first argues that the Board erred in considering expunged convictions in its moral character determination. "We review the Board's legal determinations de novo but recognize that its interpretation of the INA is entitled to deference." Nyirenda v. INS, 279 F.3d 620, 623 (8th Cir. 2002) (citing Vue v. INS, 223 F.3d 713, 718 (8th Cir. 2000)); Escudero-Corona v. INS, 244 F.3d 608, 613 (8th Cir. 2001) (according "substantial deference to the agency's interpretation of the federal statutes that [the agency] implements").

At issue are several Kansas misdemeanor convictions that were expunged prior to the deportation hearing in this case: a 1985 conviction for theft and battery; a 1989 conviction for welfare fraud; and a 1991 conviction for welfare fraud.[9] During the deportation proceedings, the Immigration Judge heard testimony and received evidence regarding these convictions. His decision indicates that he considered the convictions relevant to the moral character determination. On appeal, the Board held that consideration of Ikenokwalu's expunged convictions was proper.

---

reviewed for abuse of discretion).

[9] On January 30, 1996, Ikenokwalu's 1989 and 1991 convictions for welfare fraud were expunged by the District Court of Johnson County, Kansas, under Kan. Stat. Ann. § 21-4619. Her 1985 convictions for theft and battery were expunged by the Municipal Court of Overland Park, Kansas, on February 8, 1996, pursuant to Kan. Stat. Ann. § 12-4516.

We agree with the Board that an Immigration Judge may consider expunged convictions in making a moral character determination in conjunction with an application for suspension of deportation. We reject Ikenokwalu's suggestion that to do so is an affront to state sovereignty. See Franklin v. INS, 72 F.3d 571, 572 (8th Cir. 1995) ("[T]he consequences a state chooses to place on [a] conviction in its own courts under its own laws cannot control the consequences given to the conviction in a federal deportation proceeding." (citation omitted)). Where, as here, the moral character inquiry is governed by the catchall provision of 8 U.S.C. § 1101(f), the Immigration Judge may properly consider the rehabilitative judgment of a state, as evidenced by an expungement. The Immigration Judge need not, however, act as if the offenses or convictions never occurred. See Renteria-Gonzalez v. INS, 310 F.3d 825, 835 (5th Cir. 2002) (discussing effect of vacated conviction on deportation proceedings and noting that "five circuits . . . have concluded that a vacated or otherwise expunged state conviction remains valid . . ." for purposes of the immigration laws); Vasquez-Velezmoro, 281 F.3d at 698-99 (rejecting alien's contention that expunged state drug conviction is not a "conviction" for immigration purposes). We note that a contrary holding would lead to anomalous results whereby an alien's treatment for immigration purposes would depend upon the vagaries of state law and geographical happenstance. See Renteria-Gonzales, 310 F.3d at 835 (rejecting interpretation of immigration law by which "aliens convicted of identical crimes would face different immigration consequences based on the fortuity of the state in which they committed their crimes").

The next issue before us is whether, and to what extent, the INS may consider conduct predating the statutorily-prescribed period for which good moral character must be established. Ikenokwalu sought suspension of deportation under the battered spouse amendment to the INA. 8 U.S.C. § 1254(a)(3). For purposes of this appeal, we accept the parties' position that the amendment reduces to three years the period of time during which Ikenokwalu must prove good moral character. Given this

interpretation, Ikenokwalu argues that the Board's consideration of conduct predating the relevant three year period was improper.

We find reasonable the Board's interpretation of 8 U.S.C. § 1254(a)(3) to permit consideration of past (pre-statutory period) conduct in determining present moral character. The ultimate determination is whether an applicant has established good moral character during the relevant statutory time period. That determination, however, may be informed by evidence of past misconduct. "Whether the petitioner can establish that he has reformed and rehabilitated from this prior conduct is germane to the determination of whether he has established good moral character from the beginning of the [statutory] period to the present." Santamaria-Ames v. INS, 104 F.3d 1127, 1132 (4th Cir. 1996) (evaluating good moral character element of noncitizen veteran's application for naturalization under a statute which requires showing of good moral character for one year prior to application). "If the petitioner demonstrates 'exemplary conduct with every evidence of reformation and subsequent good moral character' from the beginning of the [statutory] period to the present, then his application cannot be denied based *solely* on his prior [misconduct], although it is highly relevant to the ultimate determination." Id. (emphasis added) (internal citation omitted); see also Gatcliffe v. Reno, 23 F. Supp. 2d 581, 585 (D.V.I. 1998) (citing cases for proposition that, with regard to naturalization applications, acts outside the relevant statutory period "must be considered together with any rehabilitation which occurred afterward."). We find the reasoning set forth in Santamaria-Ames equally applicable here and hold that conduct predating the relevant statutory time period may be considered relevant to the moral character determination under 8 U.S.C. § 1254(a)(3), but that such conduct cannot be used as the sole basis for an adverse finding on that element.

In light of the above, we conclude that the Board's factual determination that Ikenokwalu failed to establish good moral character during the three year statutory

period was supported by substantial evidence on the record and we affirm the Board's legal determination that she was therefore not eligible for discretionary suspension of deportation. See Nyirenda, 279 F.3d at 623 (applying substantial evidence review to the Board's factual findings and de novo review to its legal determinations). In order to qualify for discretionary suspension of deportation, Ikenokwalu was required to prove that in the three years preceding her application for suspension she was a person of good moral character. The Board expressly considered both negative and positive aspects of Ikenokwalu's character and did not solely rely upon her past conduct in making its moral character determination. Rather, the Board concluded that Ikenokwalu's instances of misconduct *within* the statutory period, viewed in the context of her previous record of transgressions with legal and immigration authorities, offset the positive factors she presented and undercut her claim of rehabilitation.[10]

It is true that Ikenokwalu's conduct prior to the relevant statutory period may have been objectively more egregious. However, the Board expressly rejected Ikenokwalu's contention that the Immigration Judge had given disproportionate weight to her nearly decade-old criminal convictions and found that Ikenokwalu "had also engaged in more recent conduct which indicates a lack of good moral

---

[10] In its analysis on this point, the Board noted that in 1984 Ikenokwalu entered into a "sham marriage" with "a man of diminished capacity in order to obtain an immigration benefit. This finding stems from a 1986 order rescinding Ikenokwalu's lawful permanent resident status. In a pending motion to reopen before the Board of Immigration Appeals, Ikenokwalu is, *inter alia*, attempting to collaterally attack the 1986 order and sham marriage finding. In a motion filed with this court, Ikenokwalu seeks to have judicial notice taken of those proceedings and/or supplement the appeal record with the related moving papers. We deny the motion as our review of a final order of deportation is limited to the administrative record. See 8 U.S.C. § 1105a(a)(4) (repealed by the IIRIRA but applicable to transitional cases); Lukowsi v. INS, 279 F.3d 644, 646 (8th Cir. 2002). The materials and arguments advanced by Ikenokwalu in support of her motion to reopen are beyond our limited jurisdiction.

character."[11] We note that the deportation hearing in this case lasted several days and is replete with evidence which places Ikenokwalu's present character and veracity at issue, particularly in light of her past misconduct. After careful review of the entire record, we agree that it demonstrates a pattern of deceptive conduct which continues into the present and supports a finding that Ikenokwalu failed to meet her burden of establishing good moral character during the three years prior to her application for suspension of deportation.

## C.

Finally, we briefly address Ikenokwalu's due process claim that the Board's consideration of expunged convictions and pre-statutory time period conduct was fundamentally unfair and made the resulting decision unreliable. She also claims a procedural due process violation because she was unprepared to counter the Board's use of such evidence. Even assuming we have jurisdiction to consider constitutional challenges to INS proceedings, see Lukowski, 279 F.3d at 646-47 (noting debate on this jurisdictional issue), we find no error in the Board's consideration of the expunged convictions and/or the earlier conduct. Accordingly, Ikenokwalu cannot establish substantive or procedural due process violations.

---

[11] The Board referenced three examples from the record: a Protection from Abuse Petition filed by Ikenokwalu against her ex-husband with regard to their daughter, which was adjudged to have not been filed in good faith; an affidavit describing witnessed threats and harassing behavior by Ikenokwalu toward a school counselor who testified pursuant to a court subpoena in a hearing relating to the visitation rights of Ikenokwalu's ex-husband; and evidence of conduct meant to deceive Ikenokwalu's employer as to her whereabouts when she was in custody.

## III.

For the foregoing reasons, we affirm the Board's decision that Ikenokwalu has not established the good moral character necessary to the Attorney General's exercise of discretionary relief under 8 U.S.C. § 1254(a)(3) or 1254(e).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-