**AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, Employees Pension Plan, Appellant,**

v.

**AMERICAN INTERNATIONAL GROUP, INC., Appellee.**

**Docket No. 05–2825–cv.**

United States Court of Appeals, Second Circuit.

Argued: Dec. 15, 2005.

Last Submission: June 16, 2006.

Decided: Sept. 5, 2006.

122

Jay W. Eisenhofer (Jacqueline Bryks, Michael J. Barry, on the brief), Grant & Eisenhofer, P.A., New York, N.Y., for Plaintiff–Appellant.

Lewis R. Clayton (Lewis E. Farberman, on the brief), Paul, Weiss, Rifkind, Wharton & Garrison, New York, N.Y., for Defendant–Appellee.

Before: OAKES, CALABRESI, and WESLEY, Circuit Judges.

WESLEY, Circuit Judge:

This case raises the question of whether a shareholder proposal requiring a company to include certain shareholder-nominated candidates for the board of directors on the corporate ballot can be excluded from the corporate proxy materials on the basis that the proposal "relates to an election" under Securities Exchange Act Rule 14a–8(i)(8), 17 C.F.R. § 240.14a–8 ("election exclusion" or "Rule 14a–8(i)(8)"). Complicating this question is not only the ambiguity of Rule 14a–8(i)(8) itself but also the fact that the Securities Exchange Commission (the "SEC" or "Commission") has ascribed two different interpretations to the Rule's language. The SEC's first interpretation was published in 1976, the same year that it last revised the election exclusion. The Division of Corporation Finance (the "Division"), the group within the SEC that handles investor disclosure matters and issues no-action letters,[1] continued to apply this interpretation consistently for fifteen years until 1990, when it began applying a different interpretation, although at first in an ad hoc and inconsistent manner. The result of this gradual interpretive shift is the SEC's second interpretation, as set forth in its amicus brief to this Court. We believe that an agency's interpretation of an ambiguous regulation made at the time the regulation was implemented or revised should control unless that agency has offered sufficient reasons for its changed interpretation. Accordingly, we hold that a shareholder proposal that seeks to amend the corporate bylaws to establish a procedure by which shareholder-nominated candidates may be included on the corporate ballot does not relate to an election within the meaning of the Rule and therefore cannot be excluded from corporate proxy materials under that regulation.

## Background

The American Federation of State, County & Municipal Employees ("AFSCME") is one of the country's largest public service employee unions. Through its pension plan, AFSCME holds 26,965 shares of voting common stock of American International Group ("AIG" or "Company"), a multi-national corporation operating in the insurance and financial services sectors. On December 1, 2004, AFSCME submitted to AIG for inclusion in the Company's 2005 proxy statement a shareholder proposal that, if adopted by a

---

1. Elaborating upon the nature of the no-action process, the Court has stated:

 The no-action process works as follows: Whenever a corporation decides to exclude a shareholder proposal from its proxy materials, it "shall file" a letter with the Division explaining the legal basis for its decision. *See* Rule 14a–8(d)(3). If the Division staff agrees that the proposal is excludable, it may issue a no-action letter, stating that, based on the facts presented by the corpo-

ration, the staff will not recommend that the SEC sue the corporation for violating Rule 14a–8 . . . . The no-action letter, however, is an informal response, and does not amount to an official statement of the SEC's views. . . . No-action letters are deemed interpretive because they do not impose or fix legal relationship upon any of the parties.

*N.Y. City Employees' Ret. Sys. v. SEC*, 45 F.3d 7, 12 (2d Cir.1995).

majority of AIG shareholders at the Company's 2005 annual meeting,[2] would amend the AIG bylaws to require the Company, under certain circumstances, to publish the names of shareholder-nominated candidates for director positions together with any candidates nominated by AIG's board of directors ("Proposal").[3] AIG sought the input of the Division regarding whether AIG could exclude the Proposal from its proxy statement under the election exclusion on the basis that it "relates to an election." The Division issued a no-action letter in which it indicated that it would not recommend an enforcement action against AIG should the Company exclude the Proposal from its proxy statement. American International Group, Inc., SEC No–Action Letter, 2005 WL 372266 (Feb 14, 2005) ("AIG No–Action Letter").

Armed with the no-action letter, AIG then proceeded to exclude the Proposal from the Company's proxy statement. In response, AFSCME brought suit in the United States District Court for the Southern District of New York (Stanton, J.) seeking a court order compelling AIG to include the Proposal in its next proxy statement. The district court denied AFSCME's motion for a preliminary injunction, concluding that AFSCME's Proposal "on its face 'relates to an election.' Indeed, it relates to nothing else." *Am. Fed'n of State, County & Mun. Employees Pension Plan v. Am. Int'l Group*, 361 F.Supp.2d 344, 346 (S.D.N.Y.2005). After this Court denied AFSCME's motion for expedited appeal, the parties stipulated that the district court's opinion denying AFSCME's motion for a preliminary in-

**2.** Delaware corporate law, which governs AIG's internal affairs, provides that shareholders have the power to amend bylaws by majority vote. *See* DEL.CODE ANN. tit. 8, § 109(a).

**3.** The AFSCME Proposal states in relevant part:

RESOLVED, pursuant to Section 6.9 of the By-laws (the "Bylaws") of American International Group Inc. ("AIG") and section 109(a) of the Delaware General Corporation Law, stockholders hereby amend the Bylaws to add section 6.10:

"The Corporation shall include in its proxy materials for a meeting of stockholders the name, together with the Disclosure and Statement (both defined below), of any person nominated for election to the Board of Directors by a stockholder or group thereof that satisfies the requirements of this section 6.10 (the "Nominator"), and allow stockholders to vote with respect to such nominee on the Corporation's proxy card. Each Nominator may nominate one candidate for election at a meeting.

To be eligible to make a nomination, a Nominator must:

(a) have beneficially owned 3% or more of the Corporation's outstanding common stock (the "Required Shares") for at least one year;

(b) provide written notice received by the Corporation's Secretary within the time period specified in section 1.11 of the Bylaws containing (i) with respect to the nominee, (A) the information required by Items 7(a), (b) and (c) of SEC Schedule 14A (such information is referred to herein as the "Disclosure") and (B) such nominee's consent to being named in the proxy statement and to serving as a director if elected; and (ii) with respect to the Nominator, proof of ownership of the Required Shares; and

(c) execute an undertaking that it agrees (i) to assume all liability of any violation of law or regulation arising out of the Nominator's communications with stockholders, including the Disclosure (ii) to the extent it uses soliciting material other than the Corporation's proxy materials, comply with all laws and regulations relating thereto.

The Nominator shall have the option to furnish a statement, not to exceed 500 words, in support of the nominee's candidacy (the "Statement"), at the time the Disclosure is submitted to the Corporation's Secretary. The Board of Directors shall adopt a procedure for timely resolving disputes over whether notice of a nomination was timely given and whether the Disclosure and Statement comply with this section 6.10 and SEC Rules."

junction "be deemed to contain the Court's complete findings of fact and conclusions of law with respect to all claims asserted by plaintiff in this action" and that it also "be deemed a final judgment on the merits with respect to all claims asserted by plaintiff in this action." Pursuant to this joint stipulation, the district court entered final judgment denying plaintiff's claims for declaratory and injunctive relief and dismissing plaintiff's complaint.

## Discussion

■ Rule 14a–8(i)(8), also known as "the town meeting rule," regulates what are referred to as "shareholders proposals," that is, "recommendation[s] or requirement[s] that the company and/or its board of directors take [some] action, which [the submitting shareholder(s) ] intend to present at a meeting of the company's shareholders," 17 C.F.R. § 240.14a–8(a). If a shareholder seeking to submit a proposal meets certain eligibility and procedural requirements,[4] the corporation is required to include the proposal in its proxy statement and identify the proposal in its form of proxy, unless the corporation can prove to the SEC that a given proposal may be excluded based on one of thirteen grounds enumerated in the regulations. *Id.* § 240.14a–8(i)(1)–(13). One of these grounds, Rule 14a–8(i)(8), provides that a corporation may exclude a shareholder proposal "[i]f the proposal relates to an

election for membership on the company's board of directors or analogous governing body." *Id.* § 240.14a–8(i)(8).

■ We must determine whether, under Rule 14a–8(i)(8), a shareholder proposal "relates to an election" if it seeks to amend the corporate bylaws to establish a procedure by which certain shareholders are entitled to include in the corporate proxy materials their nominees for the board of directors ("proxy access bylaw proposal"). "In interpreting an administrative regulation, as in interpreting a statute, we must begin by examining the language of the provision at issue." *Resnik v. Swartz*, 303 F.3d 147, 151–52 (2d Cir.2002) (citing *New York Currency Research Corp. v. CFTC*, 180 F.3d 83, 92 (2d Cir.1999)). The relevant language here—"relates to an election"—is not particularly helpful. AFSCME reads the election exclusion as creating an obvious distinction between proposals addressing a particular seat in a particular election (which AFSCME concedes are excludable) and those, like AFSCME's proposal, that simply set the background rules governing elections generally (which AFSCME claims are not excludable). AFSCME's distinction rests on Rule 14a–8(i)(8)'s use of the article "an," which AFSCME claims "necessarily implies that the phrase 'relates to an election' is intended to relate to proposals that ad-

---

**4.** "In order to be eligible to submit a proposal, [a shareholder] must have continuously held at least $2,000 in market value, or 1%, of the company's securities entitled to be voted on the proposal at the meeting for at least one year by the date [of the proposal's submission]." 17 C.F.R. § 240.14a–8(b)(1). "Each shareholder may submit no more than one proposal to a company for a particular shareholders' meeting." *Id.* § 240.14a–8(c). "The proposal, including any accompanying supporting statement, may not exceed 500 words." *Id.* § 240.14a–8(d). The company's "principal executive offices" must have re-

ceived the shareholder proposal "not less than 120 calendar days before the date of the company's proxy statement released to shareholders in connection with the previous year's annual meeting." *Id.* § 240.14a–8(e)(2). "[I]f the company did not hold an annual meeting the previous year, or if the date of th[e present] year's annual meeting has been changed by more than 30 days from the date of the previous year's meeting, then the deadline is a reasonable time before the company begins to print and mail its proxy materials." *Id.*

dress *particular elections,* instead of simply 'elections' generally." It is at least plausible that the words "an election" were intended to narrow the scope of the election exclusion, confining its application to proposals relating to "a particular election *and not* elections generally." It is, however, also plausible that the phrase was intended to create a comparatively broader exclusion, one covering "a particular election *or* elections generally" since any proposal that relates to elections in general will necessarily relate to an election in particular. The language of Rule 14a8(i)(8) provides no reason to adopt one interpretation over the other.

 When the language of a regulation is ambiguous, we typically look for guidance in any interpretation made by the agency that promulgated the regulation in question. *See Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (holding that an agency's interpretation of its own regulation is entitled to deference provided that the regulation is ambiguous); *see also Christensen v. Harris County,* 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). We are aware of two statements published by the SEC that offer informal interpretations of Rule 14a–8(i)(8). The first is a statement appearing in the amicus brief that the SEC filed in this case at our request.[5] The second interpretation is contained in a statement the SEC published in 1976, the last time the SEC revised the election exclusion. Neither of these interpretations has the force of law. But, while agency interpretations that lack the force of law do not warrant deference when they interpret ambiguous *statutes,* they do normally warrant deference when they interpret ambiguous *regulations.*

*See Christensen,* 529 U.S. at 588, 120 S.Ct. 1655 (citing *Auer,* 519 U.S. at 461, 117 S.Ct. 905); *see also Levy v. Southbrook Int'l Invs., Ltd.,* 263 F.3d 10, 14 (2d Cir. 2001) (explaining that courts will defer to an agency's interpretation of its own regulation, presented in the agency's amicus brief, unless the interpretation is plainly erroneous or inconsistent with the regulation).

In its amicus brief, the SEC interprets Rule 14a–8(i)(8) as permitting the exclusion of shareholder proposals that "would result in contested elections." The SEC explains that "[f]or purposes of Rule 14a–8, a proposal would result in a contested election if it is a means either to campaign for or against a director nominee or to require a company to include shareholder-nominated candidates in the company's proxy materials." Under this interpretation, a proxy access bylaw proposal like AFSCME's would be excludable under Rule 14a–8(i)(8) because it "is a means to require AIG to include shareholder-nominated candidates in the company's proxy materials." However, that interpretation is plainly at odds with the interpretation the SEC made in 1976.

In that year, the SEC amended Rule 14a–8(i)(8) in an effort to clarify the purpose of the existing election exclusion. The SEC explained that "with respect to corporate elections, [ ] Rule 14a–8 is not the proper means for conducting campaigns or effecting reforms in elections of that nature [i.e., "corporate, political or other elections to office"], *since other proxy rules, including Rule 14a–11, are applicable thereto."* Proposed Amendments to Rule 14a–8, Exchange Act Release No. 34–12598, 41 Fed.Reg. 29,982, 29,9845 (proposed July 7, 1976) (emphasis

---

5. On March 27, 2006, the Commission filed an amicus brief in opposition to AFSCME's position. On May 16, 2006, AFSCME filed a reply to the Commission's amicus brief. AIG responded to AFSCME's reply on June 15, 2006.

added) ("1976 Statement"). The district court opinion quoted the 1976 Statement but omitted the italicized language and concluded that shareholder proposals were not intended to be used to accomplish any type of election reform. *Am. Fed'n of State, County & Mun. Employees Pension Plan*, 361 F.Supp.2d at 346–47. Clearly, however, that cannot be what the 1976 Statement means. Indeed, when the SEC finally adopted the revision of Rule 14a–8(i)(8) four months after publication of the 1976 Statement, it explained that it was rejecting a previous proposed rule (which would have authorized the exclusion of proposals that "relate[ ] to a corporate, political or other election to office") in favor of the current version (which authorizes the exclusion of proposals that simply "relate[ ] to an election") so as to avoid creating "the erroneous belief that the Commission intended to expand the scope of the existing exclusion to cover proposals dealing with matters previously held not excludable by the Commission, such as cumulative voting rights, general qualifications for directors, and political contributions by the issuer." Adoption of Amendments Relating to Proposals by Security Holders, Exchange Act Release No. 34–129999, 41 Fed.Reg. 52,994, 52,998 (Nov. 22, 1976) ("1976 Adoption"). And yet, all three of these shareholder proposal topics—cumulative voting rights, general qualifications for directors, and political contributions—fit comfortably within the category "election reform."

In its amicus brief, the SEC places a slightly different gloss on the 1976 Statement than did the district court. The SEC reads the 1976 Statement as implying that the purpose of Rule 14a–8(i)(8) is to authorize the exclusion of proposals that seek to effect, not election reform in general, but only certain types of election reform, namely those to which "other proxy rules, including Rule 14a–11," are generally applicable. In 1976, Rule 14a–11 was essentially the equivalent of current Rule 14a–12, which requires certain disclosures where a solicitation is made "for the purpose of opposing" a solicitation by any other person "with respect to the election or removal of directors." 17 C.F.R. § 240.14a–12(c). The SEC reasons that, based on the 1976 Statement, "a proposal may be excluded pursuant to Rule 14a–8(i)(8) if it would result in an immediate election contest (e.g., by making a director nomination for a particular meeting) or would set up a process for shareholders to conduct an election contest in the future by requiring the company to include shareholder director nominees in the company's proxy materials for subsequent meetings."

We agree with the SEC that, based on the 1976 Statement, shareholder proposals can be excluded under the election exclusion if they would result in an immediate election contest. We understand the phrase "since other proxy rules, including Rule 14a–11, are applicable thereto" in the 1976 Statement to mean that under Rule 14a–8(i)(8), companies can exclude shareholder proposals dealing with those election-related matters that, if addressed in a proxy solicitation—the alternative to a shareholder proposal—would trigger Rule 14a–12, or the former Rule 14a11. A proxy solicitation nominating a candidate for a specific election would be made "for the purpose of opposing" the company's proxy solicitation and therefore would clearly trigger Rule 14a–12. Accordingly, based on the 1976 Statement, a shareholder proposal seeking to contest management's nominees would be excludable under Rule 14a–8(i)(8).

By contrast, a proxy solicitation seeking to add a proxy access amendment to the corporate bylaws does not involve opposing solicitations dealing with "the election or removal of directors," and therefore

Rule 14a–12, or, equivalently, the former Rule 14a–11, would not apply to a proposal seeking to accomplish the same end. Thus, we cannot agree with the second half of the SEC's interpretation of the 1976 Statement: that a proposal may be excluded under Rule 14a8(i)(8) if it would simply establish a process for shareholders to wage a future election contest.

The 1976 Statement clearly reflects the view that the election exclusion is limited to shareholder proposals used to oppose solicitations dealing with an identified board seat in an upcoming election and rejects the somewhat broader interpretation that the election exclusion applies to shareholder proposals that would institute procedures making such election contests more likely.[6] The SEC suggested as much when, four months after its 1976 Statement, it explained that the scope of the election exclusion does not cover shareholder proposals dealing with matters such as cumulative voting and general director requirements, both of which have the potential to increase the likelihood of election contests. *See* 1976 Adoption, 41 Fed.Reg. at 52,998.

That the 1976 statement adopted this narrower view of the election exclusion finds further support in the fact that it was also the view that the Division adopted for roughly sixteen years following publication of the SEC's 1976 Statement. *See e.g.,* Union Oil Co. of Calif., SEC No–Action Letter, 1983 WL 30873, at *4–5 (Feb. 24, 1983); Mobil Corp., SEC No–Action Letter, 1981 WL 26205, at *22 (Mar. 3, 1981); Union Oil Co. of Calif., SEC No–Action Letter, 1981 WL 24701, at *7 (Jan. 29, 1981); Unicare Servs., SEC No–Action Letter, 1980 WL 15475, at *7 (May 13, 1980); *see also* Newbury Corp., SEC No–Action Letter, 1986 WL 67178, at *3 (Aug. 11, 1986). It was not until 1990 that the Division first signaled a change of course by deeming excludable proposals that *might* result in contested elections, even if the proposal only purports to alter general procedures for nominating and electing directors. *See, e.g.,* Thermo Electron, SEC No–Action Letter, 1990 WL 286329, at *19 (Mar. 22, 1990); Unocal Corp., SEC No–Action Letter, 1990 WL 285946, at *7 (Feb. 6, 1990); Bank of Boston, SEC No–Action Letter, 1990 WL 285947, at *14 (Jan. 26, 1990).[7]

**6.** We are, of course, aware that the 1976 Statement refers not solely to Rule 14a–11 but to "other proxy rules, including Rule 14a–11." Surely, however, the reference to "other proxy rules" cannot mean that the election exclusion applies to shareholder proposals dealing with matters that, if addressed in proxy solicitations, would implicate *any* other proxy rule because such an interpretation would extend the election exclusion's coverage to all types of election reform, and, as already mentioned, the SEC has clearly stated that Rule 14a–8(i)(8) does not reach all types of election reform. Rather, we find that the qualifying phrase "including Rule 14a–11" suggests that "other proxy rules" means "other proxy rules dealing with election contests."

**7.** Even then, the Division's position was far from clear-cut. Between 1990 and 1998, the Division continued to issue intermittently no-

action letters adopting its prior distinction between procedures governing elections generally and those dealing with specific election contests. *See, e.g.,* Dravo Corp., SEC No–Action Letter, 1995 WL 73549, at *1 (Feb. 21, 1995); Pinnacle West Capital Corp., SEC No–Action Letter, 1993 WL 93599, at *1 (Mar. 26, 1993). Since roughly 1998, the Division has consistently adopted the position expressed in the AIG No–Action Letter, which is the same position the SEC advances in its amicus brief. *See, e.g.,* The Walt Disney Co., SEC No–Action Letter, 2004 WL 3091960, at *1 (Dec. 28, 2004); Wilshire Oil Co. of Texas, SEC No–Action Letter, 2003 WL 1738828, at *1 (Mar. 28, 2003); Toys "R" Us, Inc., SEC No–Action Letter, 2000 WL 459729, at *4 (Apr. 3, 2000); BellSouth Corp., SEC No–Action Letter, 1998 WL 56565, at *2 (Feb. 4, 1998).

Because the interpretation of Rule 14a–8(i)(8) that the SEC advances in its amicus brief—that the election exclusion applies to proxy access bylaw proposals—conflicts with the 1976 Statement, it does not merit the usual deference we would reserve for an agency's interpretation of its own regulations. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (quoting *Watt v. Alaska*, 451 U.S. 259, 273, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981))) (stating that an agency's interpretation of a regulation that conflicts with a prior interpretation is " 'entitled to considerably less deference' than a consistently held agency view"). The SEC has not provided, nor to our knowledge has it or the Division ever provided, reasons for its changed position regarding the excludability of proxy access bylaw proposals. Although the SEC has substantial discretion to adopt new interpretations of its own regulations in light of, for example, changes in the capital markets or even simply because of a shift in the Commission's regulatory approach, it nevertheless has a "duty to explain its departure from prior norms." *Atchison, T. & S.F. Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973) (citing *Sec. of Agric. v. United States*, 347 U.S. 645, 652–53, 74 S.Ct. 826, 98 L.Ed. 1015 (1954)); *cf. Torrington Extend–A–Care Employee Ass'n v. NLRB*, 17 F.3d 580, 589 (2d Cir.1994) (stating that "an agency may alter its interpretation of a statute so long as the new rule is consistent with the statute, applies to all litigants, and is supported by a 'reasoned analysis' ").

In its amicus submission, the SEC fails to so much as acknowledge a changed position, let alone offer a reasoned analysis of the change. The amicus brief is curiously silent on any Division action prior to 1990 and characterizes the intermittent post–1990 no-action letters which continued to apply the pre–1990 position as mere "mistake[s]." While we by no means wish to imply that the Commission or the Division cannot correct analytical errors following a refinement of their thinking, we have a difficult time accepting the SEC's characterization of a policy that the Division consistently applied for sixteen years as nothing more than a "mistake." Although we are willing to afford the Commission considerable latitude in explaining departures from prior interpretations, its reasoned analysis must consist of something more than *mea culpas*.

Accordingly, we deem it appropriate to defer to the 1976 Statement, which represents the SEC's interpretation of the election exclusion the last time the Rule was substantively revised. *Cf. Watt*, 451 U.S. at 272–73, 101 S.Ct. 1673 (deferring to an agency's initial interpretation of a statutory provision where the interpretation was made contemporaneously with the provision's original enactment and consequently rejecting the agency's later conflicting interpretation).[8] We therefore interpret the

**8.** AIG suggests that the interpretation of the election exclusion that we adopt here—that it does not apply to proxy access proposals—"improperly conflicts" with a proposed SEC rule that would require corporations in particular circumstances to include certain shareholder-nominated director candidates in the corporate proxy statement. *See* Security Holder Director Nominations, SEC Exchange Act Release No. 34–48626, 68 Fed.Reg. 60,- 784, 60,787 (Oct. 14, 2003) ("Proposed Rule 14a–11"). Proposed Rule 14a–11 would entitle a holder of at least 5% of the corporation's voting stock to place a nominee on the corporate ballot but only if the proxy access rule had been "activated" by one of two triggering events, including the adoption, by majority vote, of a shareholder proposal submitted by a holder of more than 1% of the corporation's voting stock. Essentially, Proposed Rule 14a–

election exclusion as applying to shareholder proposals that relate to a particular

election and not to proposals that, like AFSCME's, would establish the procedural rules governing elections generally.[9]

11 establishes a process by which the shareholder proposal mechanism (subject to the heightened eligibility requirement that the proposal be submitted by a holder of more than 1% of the corporation's voting stock) may be employed to adopt a proxy access rule that is uniform across companies. We recognize that our holding facilitates a process, by means of shareholder proposals subject to the standard eligibility requirements, for adopting non-uniform proxy access rules that are less restrictive than that created by Proposed Rule 14a–11. Thus, there might very well be no reason for a rule based on Proposed Rule 14a–11 to co-exist with the procedure that our holding makes available to shareholders. Accordingly, if the Commission ultimately decides to adopt Proposed Rule 14a11, then such an action, although certainly not necessary, would likely be sufficient to modify the interpretation of Rule 14a–8(i)(8) that we have adopted here.

9. The SEC points out that certain of its disclosure rules—for example, Items 4(b) and 5(B) of Schedule 14A, *see* 17 C.F.R. § 240.14a–101—depend for their application upon the presence of a solicitation made in opposition to another solicitation. Thus, the SEC argues, "if proposals like AFSCME's were allowed, it would be possible for shareholders to wage election contests without conducting a separate proxy solicitation, and thus without providing the disclosures required by the Commission's present rules governing such contests." The question, however, is not really whether proposals like AFSCME's are allowed—they are certainly allowed, at least under the federal securities laws—the question is whether corporations can exclude such proposals if they wish to do so. Even if proxy access bylaw proposals were excludable under Rule 14a–8(i)(8), a company could nevertheless decide to include the proposal in its proxy statement; if the proposal were subsequently adopted by the requisite number of shareholder votes, then, subject to the specifics of the adopted proxy access bylaw, shareholders would be able to wage election contests without conducting a separate proxy solicitation and without providing the disclosures required by the rules governing such solicitations. Thus, labeling proxy access proposals "excludable" under

the election exclusion does not address the SEC's concern about a shareholder's ability to wage election contests without undertaking a full-blown proxy solicitation.

Of course, the situations in which companies do not object to including a proxy access bylaw proposal on the corporate ballot are probably relatively rare, and the situations where such proposals are actually adopted by the requisite number of shareholder votes, even rarer. Thus, the SEC's real concern with deeming proxy access bylaw proposals non-excludable might not be that it would then be "possible for shareholders to wage election contests without conducting a separate proxy solicitation" and thereby avoid the disclosures required of such solicitations, but rather that deeming proxy access bylaw proposals non-excludable would increase the frequency of election contests made without resort to proxy solicitations, leading to a decrease in the disclosures required of such solicitations. However, we have no reason to believe that, in the absence of SEC action, our holding will result in a decrease in necessary disclosures.

As AFSCME points out, if shareholders were to adopt a proxy access bylaw, and if, subject to that bylaw, the company included certain shareholder-nominated candidates in the company's proxy statement, the company's entire proxy, including those portions dealing with shareholder-nominated candidates, would be subject to all of the existing proxy solicitation rules. To be sure, if the shareholders did not subsequently solicit proxies in favor of the candidates they nominated, and therefore there was no solicitation in opposition to the company's solicitation, then no party (neither the nominating shareholder nor the company) would be obligated to make the disclosures required by Rule 14a–12(c). However, it is unclear what disclosures required by Rule 14a–12(c) would not already be made by the company under the other proxy rules to which its proxy solicitation would be subject. Regardless, if the SEC determines that the interpretation of the election exclusion embodied in its 1976 Statement would result in a decrease in necessary disclosures or any other undesirable outcome, it can certainly change its interpretation of the election exclusion, provided that it explains its reasons for doing so.

In deeming proxy access bylaw proposals non-excludable under Rule 14a–8(i)(8), we take no side in the policy debate regarding shareholder access to the corporate ballot. There might be perfectly good reasons for permitting companies to exclude proposals like AFSCME's, just as there may well be valid policy reasons for rendering them non-excludable. However, Congress has determined that such issues are appropriately the province of the SEC, not the judiciary.

### Conclusion

For the foregoing reasons, we reverse the judgment of the district court and remand the case for entry of judgment in favor of AFSCME.