07-0756-ag
Llanos-Fernandez v. Mukasey

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

August Term, 2007

Argued: January 10, 2008            Decided: July 22, 2008
Last supplemental brief filed: May 20, 2008

Docket No. 07-0756-ag

————————————

EDISON IGNACIO LLANOS-FERNANDEZ,

*Petitioner*,

—v.—

MICHAEL B. MUKASEY,[1] ATTORNEY GENERAL OF THE UNITED STATES, MICHAEL CHERTOFF, SECRETARY OF UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

*Respondents*.

————————————

Before:

STRAUB, WESLEY, and LIVINGSTON,

*Circuit Judges*.

————————————

Petitioner Edison Ignacio Llanos-Fernandez petitions for review of an order of the Board of Immigration Appeals affirming an Immigration Judge's decision denying Llanos-Fernandez's motion to reopen his removal proceedings. Llanos-Fernandez, who was fourteen years old at the time he entered the United States, was ordered removed *in absentia* after he failed to appear for his immigration proceedings. He argues that his case should be reopened and his *in absentia* order rescinded pursuant to 8 U.S.C. § 1229a(b)(5)(C)(ii) and 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2) because his uncle, into whose custody he had been released, was not served with the notice of hearing. The petition for review is GRANTED.

——————————————————————

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as a respondent in this case.

KEVIN E. DEHGHANI, New Haven, CT, *for Petitioner*.

JEFFERY R. LEIST, Attorney (Peter D. Keisler, Assistant Attorney General, Civil Division, David V. Bernal, Assistant Director, *on the brief*), Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., *for Respondents*.

_____

PER CURIAM:

Petitioner Edison Ignacio Llanos-Fernandez petitions for review of a January 30, 2007 order of the Board of Immigration Appeals ("BIA") affirming a July 17, 2006 decision of Immigration Judge ("IJ") Michael W. Straus denying Llanos-Fernandez's motion to reopen his removal proceedings and rescind his *in absentia* removal order. *In re Edison Ignacio Llanos-Fernandez*, No. A 77 667 913 (BIA Jan. 30, 2007), *aff'g* No. A 77 667 913 (Immig. Ct. Hartford July 17, 2006). For the following reasons, we grant the petition for review. The decision of the BIA is vacated, and the case is remanded to the BIA for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Llanos-Fernandez, a native and citizen of Ecuador, was taken into custody by immigration authorities on December 13, 1999, after having entered the United States without inspection. On December 14, 1999, Llanos-Fernandez, then fourteen years old, was personally served with a notice to appear ("NTA") at a date and time "TO BE SET." That same day, Llanos-Fernandez was released into the custody of his uncle, Segundo Bosco Fernandez Bautista, a United States citizen, who completed and signed a "Questionnaire for Applicants Seeking

Custody of Juveniles Pursuant to Flores, et al. vs. Reno."[2] In this questionnaire, Llanos-Fernandez's uncle agreed, *inter alia*, to "ensure the minor's presence at all future proceedings before the Immigration and Naturalization Service and the Immigration court," to "notify the Immigration and Naturalization Service of any address change within 5 days of a move," to "not transfer [the] minor's custody [without] written permission from the District Director," and to "present the juvenile before the officers or agents of the Immigration and Naturalization Service and/or before the Executive Office for Immigration Review for any court hearing."[3]

On June 14, 2000, a notice of hearing was served by mail on Llanos-Fernandez. The notice indicated that a "MASTER hearing" had been set for November 21, 2000. It is undisputed that Llanos-Fernandez's uncle was not served with either the NTA or the notice of hearing. Llanos-Fernandez failed to appear at the hearing, and on November 21, 2000, the IJ ordered him removed to Ecuador.

On May 5, 2006, two days shy of his twenty-first birthday, Llanos-Fernandez filed a motion to reopen his removal proceedings and rescind the *in absentia* removal order on the ground that he did not receive proper notice of his hearing date. He argued that because he was

---

[2]In *Reno v. Flores*, 507 U.S. 292 (1993), the United States Supreme Court held that the immigration regulation permitting detained juvenile aliens to be released only to their parents, close relatives, or legal guardians, except in unusual and compelling circumstances, did not violate principles of substantive or procedural due process, and that the regulation was within the scope of the Attorney General's statutory discretion to continue custody over arrested aliens. *Id*. at 315.

[3]On March 1, 2003, the Immigration and Naturalization Service was reconstituted as the Bureau of Immigration and Customs Enforcement and the Bureau of U.S. Citizenship and Immigration Services, both within the Department of Homeland Security. *See Monter v. Gonzales*, 430 F.3d 546, 548 n.1 (2d Cir. 2005).

3

only fifteen years old at the time the notice of hearing was issued, his uncle should have been served with the notice of hearing as well. The IJ acknowledged that the Ninth Circuit's decision in *Flores-Chavez v. Ashcroft*, 362 F.3d 1150 (9th Cir. 2004), supported Llanos-Fernandez's position; nevertheless, on July 17, 2006, the IJ denied the motion, reasoning that the immigration court was "not bound by the Ninth Circuit decision," and that the regulations are "very clear" that "[s]ervice of notice to the custodial adult of a minor is only required in situations when the minor is under 14 years of age." By order dated January 30, 2007, the BIA affirmed the IJ's decision in an unpublished per curiam decision signed by one member of the Board. The BIA agreed with the IJ that *Flores-Chavez* "should [not] be adopted in the Second Circuit," and that "the protection for minors under the age of fourteen should [not] be extended until they are eighteen." Llanos-Fernandez filed a timely petition for review in this Court.

**DISCUSSION**

Under the well-known principles of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), if a statute is clear on its face, we "must give effect to the unambiguously expressed intent of Congress." *Fulani v. FCC*, 49 F.3d 904, 910 (2d Cir. 1995) (quoting *Chevron*, 467 U.S. at 842-43). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. (quoting *Chevron*, 467 U.S. at 843). "The [agency]'s interpretations of ambiguous provisions of the [Immigration and Nationality Act] are owed substantial deference unless 'arbitrary, capricious, or manifestly contrary to the statute.'" *Mardones v. McElroy*, 197 F.3d 619, 624 (2d Cir. 1999) (quoting *Chevron*, 467 U.S. at 844).

With respect to regulations, the agency's interpretations are also entitled to deference and are "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks and citation omitted).

In most cases, a motion to reopen removal proceedings must be filed within 90 days after the final order of removal is entered, 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2); however, pursuant to 8 U.S.C. § 1229a(b)(5)(C)(ii), an *in absentia* removal order "may be rescinded . . . upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with" the Immigration and Nationality Act ("INA"). *See also* 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2) ("An order entered in absentia in deportation proceedings may be rescinded . . . upon a motion to reopen filed . . . [a]t any time if the alien demonstrates that he or she did not receive notice . . . .").

The INA requires that the NTA "shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)." 8 U.S.C. § 1229(a)(1). The statute is silent with respect to service upon minors; however, the corresponding regulations provide that "[i]f the respondent is . . . a minor under the age of 14, the notice to appear . . . shall be served . . . upon the person or persons specified by § 103.5a(c) of this chapter." 8 C.F.R. § 236.2(a). Section 103.5a(c)(2)(ii), in turn, states that "in the case of a minor under 14 years of age, service shall be made upon the person with whom . . . the minor resides; whenever possible, service shall also be made on the near relative, guardian, committee, or friend."

Section 236.3 of the regulations is entitled: "Detention and release of juveniles." "A

5

juvenile is defined as an alien under the age of 18 years." 8 C.F.R. § 236.3(a). The regulation

provides, in relevant part:

> (1) Juveniles shall be released, in order of preference, to:
> (i) A parent;
> (ii) Legal guardian; or
> (iii) An adult relative (brother, sister, aunt, uncle, grandparent) who is not presently in Service detention, unless a determination is made that the detention of such juvenile is required to secure his or her timely appearance before the Service or the Immigration Court or to ensure the juvenile's safety or that of others. In cases where the parent, legal guardian, or adult relative resides at a location distant from where the juvenile is detained, he or she may secure release at a Service office located near the parent, legal guardian, or adult relative.
>
> (2) If an individual specified in paragraphs (b)(1)(i) through (iii) of this section cannot be located to accept custody of a juvenile, and the juvenile has identified a parent, legal guardian, or adult relative in Service detention, simultaneous release of the juvenile and the parent, legal guardian, or adult relative shall be evaluated on a discretionary case-by-case basis.
>
> (3) In cases where the parent or legal guardian is in Service detention or outside the United States, the juvenile may be released to such person as is designated by the parent or legal guardian in a sworn affidavit, executed before an immigration officer or consular officer, as capable and willing to care for the juvenile's well-being. Such person must execute an agreement to care for the juvenile and to ensure the juvenile's presence at all future proceedings before the Service or an immigration judge.
>
> (4) In unusual and compelling circumstances and in the discretion of the Director of the Office of Juvenile Affairs, a juvenile may be released to an adult, other than those identified in paragraphs (b)(1)(i) through (b)(1)(iii) of this section, who executes an agreement to care for the juvenile's well-being and to ensure the juvenile's presence at all future proceedings before the Service or an immigration judge.

*Id*. § 236.3(b).

Llanos-Fernandez argues that his proceedings should be reopened and his *in absentia*

removal order rescinded pursuant to 8 U.S.C. § 1229a(b)(5)(C)(ii) and 8 C.F.R.

§ 1003.23(b)(4)(iii)(A)(2) because he did not receive notice of his removal hearing as required by

6

the statute and regulations. Specifically, he argues that because he was only fifteen years old when the notice of hearing was issued, and because his uncle was made to agree in writing to ensure his presence at any future immigration proceedings, his uncle should have been given notice of the hearing as well.

Llanos-Fernandez's argument finds support in *Flores-Chavez*, a Ninth Circuit case with facts largely similar to those in the present case. Relying on 8 C.F.R. § 236.3,[4] the Ninth Circuit concluded that "the INS's service of the time and place of the proceedings on only Flores himself and not on the adult who took custody of him deprived Flores of the *effective* notice to which he was legally entitled" under the statute. *Flores-Chavez*, 362 F.3d at 1157. The court reasoned that "[t]he fair implication of § [236.3] as a whole is that *any* adult to whom an alien juvenile is released is charged with the dual responsibilities of caring for the juvenile and ensuring that the juvenile keeps his obligations to the court." *Id*. at 1156.[5] It further reasoned:

> The regulatory framework which includes 8 C.F.R. § [236.3] contemplates that no minor alien under age eighteen should be presumed responsible for understanding his rights and responsibilities in preparing for and appearing at final immigration proceedings. Adoption of the INS's position would defeat the very purpose of the release provisions. It is illogical for the INS both to require the legally responsible adult to ensure the juvenile's attendance at the hearing and to withhold the notice of hearing which would enable the adult to fulfill that responsibility and to understand

---

[4]The court in *Flores-Chavez* actually cited 8 C.F.R. § 242.24 throughout its opinion; however, as the court noted, "[t]his regulation was recodified at 8 C.F.R. § 236.3 on March 6, 1997." *Flores-Chavez*, 362 F.3d at 1153 n.1. To avoid confusion, we refer to the regulation as § 236.3.

[5]Indeed, in the present case, as stated above, Llanos-Fernandez's uncle was made to sign a questionnaire in which he agreed to "ensure the minor's presence at all future proceedings before the Immigration and Naturalization Service and the Immigration court," and to "present the juvenile before the officers or agents of the Immigration and Naturalization Service and/or before the Executive Office for Immigration Review for any court hearing."

the consequences of a failure to do so.

*Id.* at 1157.

The court also pointed to the arbitrariness of the age cutoff in 8 C.F.R. § 103.5a(c)(2)(ii) as another reason for rejecting the government's argument that service on a custodial adult need only be made when the minor is under fourteen years of age:

> The INS has offered no justification whatsoever for departing from its stated presumption in [§ 236.3] that alien juveniles under eighteen require a responsible adult to help them navigate final immigration proceedings. The INS's mysterious selection with regard to notice alone of the age of fourteen as the point at which a minor no longer needs an adult's help is particularly incomprehensible. Indeed, at age fourteen, a minor could not even drive himself to a hearing that he is required to attend, and might well be unable to navigate a public transportation system.

*Id.* at 1159.

Finally, the court reasoned that the government's practice of only serving minors over the age of fourteen implicated due process concerns. *Id.* at 1160. Accordingly, the court performed the three-factor test laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), concluding that "notice to an alien juvenile in custody but not to the responsible adult into whose care he is released could raise serious constitutional due process questions," *Flores-Chavez*, 362 F.3d at 1162, and that "[i]n light of the constitutional concerns, the only reasonable construction of the statute and implementing regulations requires notice to the adult to whom the juvenile is released from custody," *id.* at 1163. Thus, the court held that "when the INS releases a minor alien to an adult's custody pursuant to 8 C.F.R. [§ 236.3], thereby making that adult responsible for the minor's future appearance at immigration proceedings, the agency must serve notice of the minor's rights and responsibilities upon that adult if the minor is under eighteen." *Id.*

8

The government urges us to reject the Ninth Circuit's reasoning because, in its view, "the Ninth Circuit substituted its judgment for the judgment of Congress and the Attorney General, who had determined that service of an [NTA] on an alien fourteen years old was sufficient," and because "[t]he Attorney General, acting for the agency, reasonably interpreted the statute to permit service of a Notice of Hearing on an alien who was fifteen years of age." Instead, the government urges us to follow the approach taken by the Eighth Circuit in *Llapa-Sinchi v. Mukasey*, 520 F.3d 897 (8th Cir. 2008).

In *Llapa-Sinchi*, the Eighth Circuit stated that it was not bound by the Ninth Circuit's decision in *Flores-Chavez* and found, to the contrary, that 8 C.F.R. §§ 103.5a(c)(2)(ii) and 236.3(a) were not inconsistent with each other, reasoning:

> The purpose of the notice provision is to let individuals know the details of their legal proceedings. The purpose of the release provision, however, is not to provide knowledge, but to provide assistance to minors in a foreign land, perhaps for the first time. It is therefore logical for the regulations to provide that minors entering the country illegally can be responsible for receiving notice regarding their court proceedings and yet also provide that minors may need assistance from adults to obtain basic necessities.

*Id*. at 900-01.[6] Moreover, on the record before it, the Eighth Circuit saw no merit in the due process challenge to the agency's decision to interpret the regulation in this manner and so found no need to construe the regulations as had the Ninth Circuit, to avoid constitutional concerns. *Id*. at 900.

---

[6]It is worth noting that it is unclear from the facts of the case whether the Eighth Circuit was even dealing with 8 C.F.R. § 236.3(a) or whether anyone was asked to sign an agreement to ensure Llapa-Sinchi's presence at future immigration hearings, as the facts section merely states that Llapa-Sinchi was "released . . . to a local legal-assistance organization, which contacted her brother-in-law." *Llapa-Sinchi*, 520 F.3d at 898.

9

We take neither the path taken by the Ninth Circuit, nor that taken by the Eighth Circuit, opting instead to remand to the BIA as a matter of discretion so that it may, in the first instance, provide a precedential interpretation of the relevant regulations and statute. *See Yuanliang Liu v. U.S. Dep't of Justice*, 455 F.3d 106, 116 (2d Cir. 2006) (remanding, as a matter of discretion, for the BIA to interpret and clarify the regulatory and statutory provisions relating to frivolousness determinations in asylum cases).

As set forth above, 8 U.S.C. § 1229 is silent with respect to service upon minors. Similarly, while 8 C.F.R. §§ 236.2(a) and 103.5a(c)(2)(ii) provide special instructions for service in every case where the respondent is a minor under the age of fourteen, those regulations are silent with respect to service upon respondents age fourteen or over. And, as the Ninth Circuit pointed out in *Flores-Chavez*, in some cases, pursuant to 8 C.F.R. § 236.3(a), respondents age fourteen or over but under the age of eighteen are released to responsible adults, provided the adult signs an agreement to ensure the respondent's attendance at all future immigration proceedings. In light of the agency's implicit recognition in § 236.3 that juveniles under the age of eighteen require the assistance of a responsible adult for at least some purposes, *see Flores-Chavez*, 362 F.3d at 1157, as well as the BIA's explicit recognition in its own case law that "the purpose of requiring service of a notice to appear on the person with whom a minor respondent resides [is] to direct service of the charging document upon the person . . . most likely to be responsible for ensuring that an alien appears before the Immigration Court at the scheduled time," *Matter of Mejia-Andino*, 23 I. & N. Dec. 533, 536 (BIA 2002) (internal quotation marks omitted), we think it necessary to remand to the agency for guidance as to whether the statute and

10

regulations also require notice to the responsible adult in cases such as this one. *See also Reno v. Flores*, 507 U.S. 292, 311 (1993) (recognizing that the purpose of the juvenile release regulation is to "protect the welfare of the juvenile" (internal quotation marks and citation omitted)). Such a reasoned interpretation will then provide this Court a "meaningful opportunity [for] review." *Melnitsenko v. Mukasey*, 517 F.3d 42, 52 (2d Cir. 2008).

We believe that remand is necessary here because, even faced with the Ninth Circuit's decision in *Flores-Chavez*, the BIA chose to issue an unpublished, non-precedential decision signed by one member of the Board conclusorily finding that Llanos-Fernandez "was properly served with both the NTA and the hearing notice." This two-paragraph decision does not provide any meaningful interpretation of the relevant statutory and regulatory provisions, nor does it give any reason to reject the reasoning of the Ninth Circuit, other than to say, "[w]e are not persuaded by [Llanos-Fernandez]'s assertion on appeal that the reasoning in the *Flores-Chavez* . . . should be adopted in the Second Circuit, or his contention that the protection for minors under the age of fourteen should be extended until they are eighteen."[7] *See Shi Liang Lin v. U.S. Dep't of Justice*, 416 F.3d 184, 192 (2d Cir. 2005) ("[T]he Supreme Court has made clear that it will not do for a court to be compelled to guess at the theory underlying a particular agency's action . . . . It is not

---

[7]In any event, it is unclear whether any such reasoning in an unpublished decision would command any deference from us. *See Maiwand v. Gonzales*, 501 F.3d 101, 104 (2d Cir. 2007) ("*Precedential* BIA decisions are eligible for *Chevron* deference insofar as they represent the agency's *authoritative* interpretations of statutes." (emphases added)); *Am. Fed'n of State, County & Mun. Employees v. Am. Int'l Group, Inc.*, 462 F.3d 121, 126 (2d Cir. 2006) ("[W]hile agency interpretations that lack the force of law do not warrant deference when they interpret ambiguous *statutes*, they do normally warrant deference when they interpret ambiguous *regulations*."); *Mizrahi v. Gonzales*, 492 F.3d 156, 158 (2d Cir. 2007) ("[U]npublished BIA decisions do not constitute agency interpretations of law . . . .").

11

difficult to understand why. Were courts obliged to create and assess ex-post justifications for inadequately reasoned agency decisions, courts would, in effect, be conscripted into making policy. Such an activity is, for myriad and obvious reasons, more properly the province of other bodies, particularly where, as here, the other body is an agency that can bring to bear particular subject matter expertise." (internal quotation marks and alterations omitted)).

In *Yuanliang Liu*, we set forth several reasons for remanding as a matter of discretion, including: (1) "Insufficient agency attention" to the issue; (2) "National uniformity"; (3) "Statutory ambiguity" as well as ambiguity in the regulations; (4) "Dearth of circuit law" on the issue; (5) The "[h]igh volume" of similar cases; and (6) "Importance of the issue." 455 F.3d at 116–18. Several, if not all, of the reasons for remand given in that case are also present here. Accordingly, we remand this case to the BIA for reconsideration of Llanos-Fernandez's appeal and to provide an interpretation and clarification of the statutory and regulatory framework regarding service upon minors, particularly minors, such as Llanos-Fernandez, who were released to a responsible adult pursuant to the provisions of 8 C.F.R. § 236.3(a).[8]

**CONCLUSION**

For the foregoing reasons, the petition for review is GRANTED. The January 30, 2007 decision of the BIA is VACATED, and the case is REMANDED to the BIA for proceedings consistent with this opinion.

---

[8]Although we asked the parties after oral argument to provide legislative and regulatory history and supplemental briefing as to, *inter alia*, the reasonableness of the age cutoff at fourteen in the regulations themselves, we note that Llanos-Fernandez did not meaningfully raise any such challenge in his opening brief to this Court. Accordingly, this argument is deemed waived. *See, e.g.*, *Joseph v. Leavitt*, 465 F.3d 87, 93–94 (2d Cir. 2006). The agency is, of course, free to explore this issue on remand.